BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
SARAH BOOT (253658)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
sboot@bholaw.com

CARPENTER LAW GROUP
TODD D. CARPENTER (234464)
402 West Broadway, 29th Floor
San Diego, CA  92101
Tel: 619/756-6994
619/756-6991 (fax)
todd@carpenterlawyers.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SONNER on Behalf of of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHWABE NORTH AMERICA, INC. and NATURE'S WAY PRODUCTS, LLC,<br><br>Defendants. | Case No. <br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750, *et seq.*; and<br>3. BREACH OF EXPRESS WARRANTY.<br><br>**DEMAND FOR JURY TRIAL** |

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Plaintiff Kathleen Sonner brings this action on behalf of herself and all
2    others similarly situated against Defendants Schwabe North America, Inc.
3    ("Schwabe") and Nature's Way Products, LLC ("Nature's Way") (collectively
4    "Defendants") and states:

5                              **NATURE OF ACTION**

6        1.    This is a consumer protection class action brought pursuant to Fed.
7    R. Civ. Proc. 23 arising out of Defendants' false advertising of their Ginkgold®
8    Products.  Defendants claim the Ginkgold Products provide actual, meaningful
9    and significant health benefits for the memory, concentration, mental sharpness,
10   and overall brain health of all consumers who ingest the Ginkgold Products'
11   tablets.  These claimed cognitive health and brain function benefits are the only
12   reason a consumer would purchase the Ginkgold Products.    Defendants'
13   advertising claims, however, are false, misleading, and reasonably likely to
14   deceive the public.

15       2.    Defendants distribute, market and sell "Ginkgold® Advanced
16   Ginkgo Extract" ("Ginkgold") and "Ginkgold® Max Advanced Ginkgo Extract
17   Max  120  mg"  (Ginkgold  Max)  (collectively,  the  "Ginkgold  Products").
18   Through  an  extensive,  integrated  and  widespread  nationwide  marketing
19   campaign, Defendants claim the Ginkgold Products, ginkgo biloba-based herbal
20   supplements,  provide  a  variety  of  significant  health  benefits  for  improving
21   memory and concentration, supporting mental sharpness, and supporting healthy
22   brain activity of all consumers who ingest the Ginkgold Products.[1]  Defendants
23   represent that the active ingredient in their Ginkgold Products, ginkgo biloba
24   extract, provides these significant health benefits.

25

26   _____
     [1]      The Ginkgold Products at issue contain just one active ingredient, which is
27   identical in each of the Ginkgold Products at issue: ginkgo biloba extract (leaf)
     standardized to 24%, ginkgo flavone glycosides and 6% terpene lactones.  The
28   Ginkgold Products' packaging, labels, marketing messages and advertisements
     convey identical or nearly identical messages regarding the purported memory,
     concentration and brain-health related health benefits.

                                 1         Case No.

00078756

BLOOD HURST & O'REARDON, LLP

3.      The same cognitive health and brain function promise is made on all of the subject Ginkgold Products and throughout the Ginkgold Products' marketing materials.  For example, on the product packaging for the Ginkgold Products, Defendants represent that the Ginkgold Products are "for MENTAL SHARPNESS," "Memory & Concentration," and that consuming the products provides "mental activity" and "cognitive function" benefits.  *See* ¶¶25-29, below (exemplar Ginkgold Product packaging and labeling).  Further, to deceptively imply scientific significance and credibility, the Ginkgold Products' packaging has also stated that the Ginkgold Products contain "Advanced, proprietary extract of premium Ginkgo biloba leaves" or substantively similar statements, including "The World's Most Researched & Advanced Ginkgo Extract," which has been "Used in over 400 studies," and is "Recommended by health care professionals worldwide."

4.      Defendants communicated the same substantive message throughout their advertising and marketing for the Ginkgold Products, including at the point of sale, on the front of Ginkgold Products' packaging: that the Ginkgold Products will provide memory and concentration, mental sharpness, and brain function benefits that are clinically meaningful to those who take Ginkgold.  Each person who has purchased the Ginkgold Products has been exposed to Defendants' misleading advertising message multiple times.  For example, the front of the Ginkgold Products' label states in all capital letters, printed in large, bolded font, that the Ginkgold Products are "for MENTAL SHARPNESS Memory & Concentration."  Throughout the front, side and back panels of the Ginkgold Products' labeling, Defendants repeat and reinforce the false and deceptive brain function and memory claims.  The only reason that a consumer would purchase the Ginkgold Products is to obtain the advertised cognitive health benefits and brain function support, which the Ginkgold Products do not provide.

///

5.      All available, reliable scientific evidence demonstrates that the Ginkgold Products have no efficacy at all, are ineffective in the improvement of cognitive health, and provide no benefits related to increasing the memory, concentration, or healthy functioning of consumers' brains.    Numerous scientifically valid studies, performed by independent researchers and published in reputable medical journals, have been conducted on ginkgo biloba, and they have universally demonstrated that ginkgo biloba does not improve brain function, and is not effective in the treatment or improvement of memory problems or cognitive health.

6.      As a result of the express and implied misleading health benefits message conveyed by their marketing campaign, Defendants have caused Plaintiff and consumers to purchase a product which does not perform as represented.  Plaintiff and other similarly situated consumers have been harmed in the amount they paid for the Ginkgold Products, which, in the case of Plaintiff Kathleen Sonner, is approximately $20.00 per 150 count bottle of Ginkgold.

7.      Plaintiff brings this action on behalf of herself and all other similarly situated consumers to halt Defendants' dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Ginkgold Products.

**JURISDICTION AND VENUE**

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendants.

9.      This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do conduct business in California.

3          Case No.
CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

Defendants have marketed, promoted, distributed, and sold the Ginkgold Products in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendants transact substantial business in this District.

**PARTIES**

11.     Plaintiff Kathleen Sonner resides in Riverside County, California. In early 2014, Plaintiff was exposed to and saw Defendants' representations regarding the brain function and memory benefits of Ginkgold by reading the Ginkgold product label in a Sprouts Farmers Market store in Temecula, California.  In reliance on the claims listed on the product label described here and above, including those claims listed on the front and side of the product label that Ginkgold will meaningfully improve "mental sharpness" and "memory and concentration," Plaintiff purchased Ginkgold.  Plaintiff estimates that she most recently purchased the Ginkgold product at the Sprouts Farmers Market at 39606 Winchester Road, Temecula, California 92591 on or around August 15, 2014. She paid approximately $20.00 for a 150 count 60 mg tablet bottle of Ginkgold. Plaintiff purchased Ginkgold believing it would provide the advertised brain function and memory benefits.  When purchasing Ginkgold, Plaintiff read and relied upon the representations on the product label prior to purchasing it.  As a result of her purchases, Plaintiff suffered injury in fact and lost money.  Had Plaintiff known the truth about Defendants' misrepresentations and omissions, she would not have purchased Ginkgold.  Plaintiff is not claiming physical harm

or seeking the recovery of personal injury damages.

12.     Defendant Schwabe North America, Inc. f/k/a Nature's Way Holding Company is organized and existing under the laws of the state of Wisconsin.  Schwabe's headquarters and principle place of business is at 825 Challenger Drive, Green Bay, Wisconsin 54311.  Schwabe manufactures, markets, sells, and distributes a variety of dietary supplements, plant-based medicines, and other health-care products.  Schwabe's brands include Nature's Way's products.

13.     Defendant Nature's Way Products, LLC f/k/a Nature's Way Products, Inc., is organized and existing under the laws of the state of Wisconsin. Nature's Way's headquarters and principle place of business is at 825 Challenger Drive, Green Bay, Wisconsin 54311.  Nature's Way is wholly-owned by Schwabe North America, Inc.  Nature's Way manufactures, markets, sells, and distributes a variety of dietary supplements, plant-based medicines, and other health-care products.  Nature's Way's brands of products include Alive!® multivitamins, Primadophilus® probiotics, Umcka ColdCare®, Wellesse®, and the Ginkgold Products.

14.     Defendants manufacture, advertise, market and distribute the Ginkgold Products to thousands of customers across the country and in the State of California.

15.     Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendants and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendants.

///

BLOOD HURST & O'REARDON, LLP

5         Case No.
**CLASS ACTION COMPLAINT**

BLOOD HURST & O'REARDON, LLP

**FACTUAL ALLEGATIONS**

*The Ginkgold Products*

16.    For more than a decade, Defendants have distributed, marketed and sold Ginkgold on a nationwide basis.

17.    The Ginkgold Products are sold at a variety of grocery chains, retail stores, online stores, pharmacies, and low cost retailers, including Sprouts Farmers Market.

18.    Defendants' Ginkgold Products include: (1) Ginkgold Max, which bottles contain 30 or 60 tablets of 120 mg Ginkgold; and (2) Ginkgold, which bottles contain 50, 75, 100, or 150 tablets of 60 mg Ginkgold.

19.    According to Defendants, and as stated on the Ginkgold Products' packaging and labeling, the active ingredient in all the Ginkgold Products is identical: "Ginkgold® Ginkgo biloba extract (leaf), standardized to contain 24% ginkgo flavone glycosides and 6% terpene lactones."

20.    Ginkgo biloba is one of the oldest living tree species. Ginkgo biloba extract like that found in Ginkgold is made from the dried green leaves of the ginkgo tree.

*Defendants' False and Deceptive Advertising of the Ginkgold Products*

21.    Throughout their advertising of the Ginkgold Products, Defendants have consistently advertised that consuming the Ginkgold Products will meaningfully improve cognitive health and brain functioning. As more fully set forth herein, the competent scientific evidence demonstrates that use of ginkgo biloba does not provide the cognitive health and brain functioning benefits represented by Defendants, and that the advertising claims are false and misleading.

22.    Since launching the Ginkgold Products, Defendants have consistently conveyed their uniform, deceptive message to consumers throughout the United States, including in California, that the Ginkgold Products provide

significant cognitive health benefits and brain function support.  This message has been made and repeated across a variety of media including on Defendants' websites and online promotional materials, and, most importantly, at the point of purchase, on the front of the Ginkgold Products' packaging and labeling where it cannot be missed by consumers.  In truth, Defendants' cognitive health and brain function health claims are false, misleading and deceptive.

23.    Throughout the relevant time period, Defendants have packaged the Ginkgold using substantially similar and deceptive packages and labels with the cognitive health benefit advertising messaging at issue.

24.    Throughout the relevant time period, the front of the Ginkgold Products' packaging and labeling states in all capital letters, printed in large, bolded font, that the Ginkgold Products are "for MENTAL SHARPNESS Memory & Concentration."

25.    The front panels for each package of Ginkgold and Ginkgold Max appear substantially as follows:



BLOOD HURST & O'REARDON, LLP

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






Case No.
CLASS ACTION COMPLAINT

00078756

26.   Throughout the other packaging panels of the Ginkgold Products' packaging, Defendants repeat and reinforce the false and deceptive cognitive health and brain functioning claims.

27.   For example, up until 2013, the side-panel packaging reinforced the false and deceptive cognitive health and brain functioning claims including stating, "Start getting the clinical benefits of Ginkgold," followed by claims that the product "helps improve mental sharpness," "stimulates activity in all areas of the brain," "supports healthy circulation to the brain and extremities," "helps maintain blood vessel tone," "Ginkgold-the smarter choice for mental sharpness," and further warrants that in "head-to-head research against other ginkgo extracts *only Ginkgold*, 'increased activity in all areas of the brain,' 'produced potent alpha enhancing effects,' and 'could be classified as a cognitive activator.'"   In addition, the packaging includes three images of "brain scan" diagrams to support the claims of increased brain activity of the Ginkgold Products as compared to unidentified "Brand A" and "Brand B" gingko extract products.   The diagrams include three brains, with the "Ginkgold brain" almost completely filled in white, demonstrating the "increased brain activity," compared to the other two "brain scans," with the brains are only partially filled in white.   That packaging side paneling appears substantially as follows:





BLOOD HURST & O'REARDON, LLP

9         Case No.

CLASS ACTION COMPLAINT

28. Similarly, from 2013 through the present, the side-paneling of the packaging of Ginkgold and Ginkgold Max also repeats and reinforces the false and deceptive cognitive health and brain functioning claims made on the front of the packaging, including stating "Cognitive Function," "For mental sharpness," and "Helps support memory, concentration and mental activity." That packaging side-paneling appears substantially as follows:



29. The labeling on the bottles of Ginkgold and Ginkgold Max also contains the false and misleading cognitive health benefit advertising at issue,



1  stating "Clinical Ginkgo Extract," "MENTAL SHARPNESS," and "Memory &
2  Concentration," and appear substantially as follows:



BLOOD HURST & O'REARDON, LLP

16      30.    Defendants' marketing representations in other media repeat and
17  reinforce the false and misleading cognitive health benefit claims made on the
18  packaging and labeling for the Ginkgold Products.   For example, on their
19  website, www.naturesway.com, Defendants make the false and misleading
20  cognitive health benefit advertising statements at issue.   Defendants claim the
21  "Benefits of Ginkgold" are:

22      **Cognitive Function**

23      • For mental sharpness

24      • Helps support memory, concentration and mental activity

25  ***Scientific Studies Confirm that the Ginkgold Products are Not Effective and***
26  ***Defendants' Health Benefits Message is False and Deceptive***

27      31.    Despite Defendants' representations, the Ginkgold Products and
28  their ginkgo biloba ingredient do not provide the advertised benefits.

11      Case No.

00078756

32.     Despite the competent scientific evidence demonstrating that ginkgo biloba and the Ginkgold Products do not provide the advertised benefits, Defendants continue to advertise that they do, leading Plaintiff and other consumers to believe that Ginkgold Products actually provide the advertised health benefits.

33.     There is no scientifically credible, clinical study published in a reputable peer-reviewed journal demonstrating that any ginkgo biloba product can "help improve mental sharpness," help with "memory and concentration," or otherwise provide the cognitive health and brain function benefits claimed by Defendants throughout the Ginkgold Products' advertising and labeling.  To the contrary, as numerous such studies have confirmed, ginkgo biloba does not protect against cognitive decline or otherwise improve an individual's cognitive abilities or brain function.

34.     The lead study was conducted using Ginkgold.  It was published in the Journal of the American Medical Association ("JAMA") in 2009 and is entitled *Ginkgo biloba for preventing cognitive decline in older adults: a randomized trial*, 302(24) JAMA 2663-2670 (2009).  This study, known as the Ginko Evaluation of Memory or "GEM Study," is the largest clinical study to date testing the effectiveness of ginkgo biloba to improve cognitive health and brain function.  It was designed and funded by the federal government's lead agency for scientific research on complementary and integrative health practices, the National Center for Complementary and Alternative Medicine (now known as the National Center for Complementary and Integrative Health) ("NCCIH"), an institute of the National Institutes of Health ("NIH").  The NCIIH also assisted with the analysis and interpretation of the data and the preparation and approval of the GEM Study manuscript.  The GEM Study was conducted over a span of eight years and included 3,069 participants, aged 72-96 years, who did not have dementia.  Participants were randomized to twice-daily doses of 120 mg

BLOOD HURST & O'REARDON, LLP

of Ginkgold Max from Schwabe Pharmaceuticals (EGb 761) or an identical-appearing placebo for an average duration of 6.1 years.  The authors of the GEM Study concluded that consumption of 240 mg daily of ginkgo biloba extract does not result in less cognitive decline either on a global cognitive score basis or in terms of any individual cognitive domains, including memory and attention, than placebo.  There were no differences in results by age, sex, race, education, or baseline cognitive status.

35.   In 2002, JAMA published a study by Solomon *et al.* entitled *Ginkgo for memory enhancement: a randomized controlled trial* 288(7) JAMA 835-840 (2002), in which 203 participants, over the age of 60 and in generally good health, were evaluated for six week periods, with half receiving 120 mg of ginkgo and the other half a placebo control.  Dr. Solomon and his co-authors concluded that ginkgo biloba did not improve performance on standard neuro-psychological tests that evaluated learning, memory, attention, and concentration.  There was no improvement on naming and verbal fluency.  There was no difference from the control group for those consuming ginko biloba on self-reported memory function or on global rating by spouses, friends, and relatives.  According to Solomon *et al.*, "These data suggest that when taken following the manufacturer's instructions, ginkgo provides no measurable benefit in memory or related cognitive function to adults with healthy cognitive function."  Furthermore, the study authors also concluded that "[d]espite the manufacturer's claims of improved memory in healthy adults, we were unable to identify any well-controlled studies that document this claim."

36.   Another well-conducted, clinical study, Carlson *et al.* (2007) demonstrated that ginkgo biloba does not improve cognitive function in healthy adults.  *See Safety and efficacy of a Ginkgo biloba-containing dietary supplement on cognitive function, quality of life, and platelet function in healthy, cognitively intact older adults*, 107(3) J Am Diet Assoc 422-32 (2007).  Carlson *et al.*,

BLOOD HURST & O'REARDON, LLP

00078756

BLOOD HURST & O'REARDON, LLP

performed a randomized, double-blind, placebo-controlled study involving 90 healthy, older adults (65-84 years old) who were randomly assigned to placebo or 160 mg gingko biloba from Schwabe (EGb 761) daily for four months. After four months of consuming either placebo or gingko, the subjects were analyzed for cognitive and quality of life improvements. Using six standardized tests for cognitive function, including tests analyzing memory, attention, and concentration, the researchers found that consuming gingko was not effective versus placebo based on any of the cognitive function tests. In fact, consuming placebo was found more effective than gingko biloba for one of the cognitive function tests, which was designed to measure delayed memory. Consumption of gingko also did not result in improvement of quality of life measures over placebo. The authors concluded their data demonstrate the "lack of an effect" and "do not support the use of a commercial ginkgo biloba-containing supplement to improve cognitive function or quality of life in healthy 65- to 85-year-old cognitively intact healthy adults with average to above-average cognitive function."

37.   Nathan *et al.* (2002), also demonstrates that consumption of gingko biloba does not result in improvements of cognitive function, including memory or concentration. *See The acute nootropic effects of Ginkgo biloba in healthy older human subjects: a preliminary investigation*, 17(1) Hum Psychopharmacol, 45-49 (2002). Nathan *et al.* performed a double-blind, placebo-controlled trial involving eleven healthy adults aged 50-72 who consumed 120 mg gingko biloba and placebo at different times and separated by a washout period. The researchers analyzed the acute cognitive effects of gingko biloba and placebo consumption using multiple memory tests. The researchers concluded that consumption of gingko did not improve cognitive function as measured by any memory test: "The data revealed no evidence of acute effects of Ginkgo biloba on cognitive functioning. The repeated measures ANOVA showed no significant

drug interactions for either the accuracy (%), response speed (ms) measure of spatial working memory, numeric working memory, picture recognition, choice reaction time or simple reaction time.  Similarly no significant drug interactions were found for the auditory verbal learning tests of verbal learning and short and long-term memory."

38.   Another study, by Canter and Ernst (2007), is a systematic review analyzing all randomized, placebo-controlled clinical trials of ginkgo biloba for cognitive function carried out in healthy subjects less than 60 years of age.  *See Ginkgo biloba is not a smart drug: an updated systematic review of randomised clinical trials testing the nootropic effects of G. biloba extracts in healthy people,* 22(5) Hum Psychopharmacology. 265-278 (2007).  Their clinical study search identified 43 potentially relevant articles from six databases.  After excluding 9 randomized, controlled trials previously analyzed in their 2002 systematic review (described below), Drs. Canter and Ernst reviewed the resulting 15 relevant clinical trials.  Noting that "[t]he negative conclusions drawn in [their] original [2002] review are strengthened by the results of the newly added studies," the 2007 study analysis concluded that evidence from clinical trials "provides no convincing evidence that G. biloba extracts ingested either as a single dose or over a longer period has a positive effect on any aspect of cognitive performance in healthy people under the age of 60 years."

39.   The 2007 clinical study review discussed in the paragraph above was an update of a 2002 review by Drs. Canter and Ernst similarly entitled *Ginkgo biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people*, 36(3) Psychopharmacol Bull 108-23 (2002).  The 2002 review was based on an analysis of all controlled clinical trials of ginkgo biloba for cognitive function in healthy subjects with a mean age less than 60 years and published up to November 2001.  Based on their review, which included nine clinical studies,

BLOOD HURST & O'REARDON, LLP

**CLASS ACTION COMPLAINT**

1  Drs. Canter and Ernst concluded "these studies indicate no marked or consistent

2  positive effects of Ginkgo biloba on any particular objective measure of

3  cognitive function."

4      40.    A 2012 meta-analysis published in Human Psychopharmacology:

5  Clinical and Experimental, Laws *et al.* reported on the search of numerous

6  databases and recent qualitative reviews for randomized controlled trials

7  examining the effects of ginkgo biloba on cognitive function (memory, executive

8  function, and attention) in healthy people across all age groups.  *See Is Ginkgo*

9  *biloba a cognitive enhancer in healthy individuals?  A meta-analysis* 27(6)

10  Human Psychopharmacology 527-533 (2012).  The study's authors, Dr. Laws

11  and his co-researchers, who based their review and meta-analysis on thirteen

12  clinical studies that collectively involved over 2,500 healthy individuals,

13  concluded that ginkgo biloba had no ascertainable positive effects on the above-

14  mentioned cognitive functions in healthy individuals.    The randomized,

15  controlled trials included in the meta-analysis included: Burns *et al.* (2006),

16  Carlson *et al.* (2007), Cieza *et al.* (2003), Elsabagh *et al.* (2005a), Elsabagh *et al.*

17  (2005b), Hartley *et al.* (2003), Mix and Crews (2000), Moulton *et al.* (2001), and

18  Solomon *et al.* (2002).    According to the researchers, and based on their

19  scientific analysis of thirteen randomized, controlled trials, "[t]he key findings

20  from this meta-analysis are that *G. biloba* has no significant impact on memory,

21  executive function or attention with all effect sizes non-significant and

22  effectively at zero…Indeed, none of the 13 studies assessing memory revealed an

23  overall significant effect size."  Citing Canter and Ernst (2007), discussed above,

24  Laws *et al.* noted their conclusion was in "accord[] with the conclusions of

25  previous systematic qualitative reviews."    The authors also noted that they

26  contrasted the results of the clinical studies analyzing memory and attention

27  involving ginkgo biloba formulations from Schwabe (EGb 761) and the LI 1370

28  formulation "to show these did not differ significantly."

BLOOD HURST & O'REARDON, LLP

Case No.

00078756

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

41.     Similarly, in a 2009 study performed in connection with the internationally prestigious Cochrane Collaboration and entitled *Ginkgo biloba for cognitive impairment and dementia*, researchers reviewed 36 trials, nine of which were six months long (2016 participants total).  *See Birks and Grimley*, *Ginkgo biloba for cognitive impairment and dementia*, (1) Cochrane Database Syst. Rev. Art. No. : CD003120 (2009).  Most trials reviewed tested the same ginkgo biloba preparation used by Schwabe (EGb761).  According to the study authors, in the more recent and more reliable trials, three out of four found no benefits for cognitive decline.  The researchers concluded that evidence that ginkgo biloba has predictable and clinically significant benefit for people with dementia or cognitive impairment is inconsistent and unreliable.

42.     *Vellas et al.* (2012) presents the results from a randomized, double-blind, placebo-controlled clinical trial known as the "GuidAge Study."  *See Vellas et al., Long-term use of standardised ginkgo biloba extract for the prevention of Alzheimer's disease: a randomised placebo-controlled trial*, 11(10) Lancet Neurol 851-859 (2012).  The authors of the GuidAge Study analyzed 2,854 participants aged 70 or older who had reported memory complaints to their primary care physicians.  The study subjects were randomly allocated to groups receiving either a twice daily dose of 120 mg of ginkgo biloba or placebo for a five-year period, and underwent annual cognitive assessments.  The study authors concluded that long-term use of ginkgo biloba does not reduce the risk of progression of Alzheimer's disease.

43.     Franke *et al.* (2014), examined the evidence from randomized placebo-controlled trials testing the cognitive enhancement effects, including attention, concentration and memory by healthy subjects, from various substances, including ginkgo biloba.  *See Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*, 264 Suppl 1, Eur. Arch Psychiatry Clin. Neurosci. 83-90 (Nov. 2014).  Franke *et al.*,

00078756

concluded that gingko biloba does not provide cognitive health benefits for healthy persons:

> With respect to healthy subjects, large RCTs and meta-analyses have shown that Ginkgo biloba has no cognitively enhancing effects neither in younger nor in older healthy subjects: There are no positive effects on vigilance, attention, reaction time or higher cognitive functioning such as memory, no matter which amount of Gingko was used or how frequently.

44.     Plaintiff and the other Class members have been and will continue to be deceived by Defendants' false and deceptive advertising claims about Ginkgold's cognitive health benefits and brain functioning support.  Plaintiff read and considered these claims and then purchased Ginkgold during the Class period.  Defendants' advertising claims were a material factor in influencing Plaintiff's decision to purchase Ginkgold.  The only purpose for purchasing Ginkgold is to obtain the represented cognitive health and brain function benefits.

45.     Defendants have reaped enormous profits from their false advertising and sale of the Ginkgold Products.

## CLASS DEFINITION AND ALLEGATIONS

46.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and all members of the following class of similarly situated individuals and entities (the "Nationwide Class"):

> All consumers who purchased Ginkgold or Ginkgold Max in the United States.  Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased Ginkgold or Ginkgold Max for the purpose of resale.

47.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also brings this action against Defendants for herself and all members of the following sub-class of similarly situated individuals and entities (the "California Sub-Class"):

BLOOD HURST & O'REARDON, LLP

**CLASS ACTION COMPLAINT**

00078756

1
2
3

All consumers who purchased Ginkgold or Ginkgold Max in the state of California. Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased Ginkgold or Ginkgold Max for the purpose of resale.

4
5
6
7
8
9

48. **Numerosity.** On information and belief, the Nationwide Class and California Sub-Class (collectively, the "Class" or "Class Members") are each so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Ginkgold Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

10
11
12
13

49. **Existence and Predominance of Common Questions of Law and Fact.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

14
15

(a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

16

(b) whether Defendants' alleged conduct violates public policy;

17
18

(c) whether the alleged conduct constitutes violations of the laws asserted;

19
20

(d) whether Defendants engaged in false or misleading advertising;

21
22

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

23
24

(f) whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

25
26
27
28

50. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendants' deceptive cognitive health benefit claims that accompanied each and

BLOOD HURST & O'REARDON, LLP

CLASS ACTION COMPLAINT

1   every Ginkgold Product that Defendants sold.  Plaintiff is advancing the same

2   claims and legal theories on behalf of herself and all members of the Class.

3       51.    ***Adequacy of Representation.*** Plaintiff will fairly and adequately

4   protect the interests of the members of the Class.  Plaintiff has retained counsel

5   experienced in complex consumer class action litigation, and Plaintiff intends to

6   prosecute this action vigorously.   Plaintiff has no adverse or antagonistic

7   interests to those of the Class.

8       52.    ***Superiority.*** A class action is superior to all other available means

9   for the fair and efficient adjudication of this controversy.  The damages or other

10  financial detriment suffered by individual Class members is relatively small

11  compared to the burden and expense that would be entailed by individual

12  litigation of their claims against Defendants.   It would thus be virtually

13  impossible for Plaintiff and Class members, on an individual basis, to obtain

14  effective redress for the wrongs done to them.   Furthermore, even if Class

15  members could afford such individualized litigation, the court system could not.

16  Individualized litigation would create the danger of inconsistent or contradictory

17  judgments arising from the same set of facts.  Individualized litigation would

18  also increase the delay and expense to all parties and the court system from the

19  issues raised by this action.  By contrast, the class action device provides the

20  benefits of adjudication of these issues in a single proceeding, economies of

21  scale, and comprehensive supervision by a single court, and presents no unusual

22  management difficulties under the circumstances here.

23      53.    The Class also may be certified because Defendants have acted or

24  refused to act on grounds generally applicable to the Class, thereby making

25  appropriate final declaratory and/or injunctive relief with respect to the members

26  of the Class as a whole.

27      54.    Plaintiff seeks preliminary and permanent injunctive and equitable

28  relief on behalf of the entire Class, on grounds generally applicable to the entire

BLOOD HURST & O'REARDON, LLP

20    Case No.

**CLASS ACTION COMPLAINT**

1    Class, to enjoin and prevent Defendants from engaging in the acts described, and

2    requiring Defendants to provide full restitution to Plaintiff and Class members.

3    55.    Unless a Class is certified, Defendants will retain monies received

4    as a result of its conduct that were taken from Plaintiff and Class members.

5    Unless a class wide injunction is issued, Defendants will continue to commit the

6    violations alleged, and the members of the Class and the general public will

7    continue to be misled.

## COUNT I

### Violations of the Wisconsin Unfair Trade Practices Act
### Wis. Stat. § 100.20 *et seq.*

11    56.    Plaintiff repeats and re-alleges the allegations contained in the

12    Paragraphs above, as if fully set forth herein.

13    57.    Plaintiff brings this claim individually and on behalf of the

14    Nationwide Class.

15    58.    This cause of action is brought pursuant to the Wisconsin Unfair

16    Trade Practices Act, Wis. Stat. § 100.20, *et seq.* (the "Wisconsin UTPA").  The

17    Wisconsin UTPA provides that "[u]nfair methods of competition in business and

18    unfair trade practices in business are hereby prohibited."

19    59.    Section 100.20(5) of the Wisconsin UTPA provides:

20    Any person suffering pecuniary loss because of a violation by any
21    other person of any order issued under this section may sue for
      damages therefor in any court of competent jurisdiction and shall
22    recover twice the amount of such pecuniary loss, together with costs,
23    including a reasonable attorney's fee.

24    60.    Section 100.20(2) of the Wisconsin UTPA permits the Wisconsin

25    Department of Agriculture, Trade and Consumer Protection to "issue general

26    orders forbidding methods of competition in business or trade practices in

27    business which are determined by the department to be unfair."

28

BLOOD HURST & O'REARDON, LLP

00078756

21        Case No.

61.    Defendants' conduct described herein violated and continues to violate § 90.02 of the Wisconsin Administrative Code, which is a general order issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection under Wis. Stat. § 100.20.

62.    Section 90.02 of the Wisconsin Administrative Code prohibits declarations on consumer commodity packages identifying the commodity in the package that are "false, deceptive or misleading."  Section 90.02 further prohibits "[i]ngredients or components that are not present in the commodity in substantial or significantly effective amounts may not be featured in the declaration of identity."

63.    As described above, on the front panel of the packages of the Ginkgold Products (the Products' "principal display panel"), Defendants identify that "Clinical Ginkgo Extract" is contained in the Ginkgold Products.  This representation violates § 90.02's deceptive declaration prohibition.

64.    The labeling of the Ginkgold Products as "Clinical Ginkgo Extract" is false, deceptive or misleading for the reasons described herein and therefore violates the Wisconsin UTPA.

65.    Further, as described herein, because the Ginkgold Products do not contain ginkgo biloba extract in a significantly effective amount, the labeling of the Ginkgold Products as "Clinical Ginkgo Extract" also violates the Wisconsin UTPA.

66.    Plaintiff and members of the Nationwide Class have purchased the Ginkgold Products and suffered pecuniary loss as a result of Defendants' unfair conduct, including its false, deceptive or misleading representations about the commodity contained in the Ginkgold Products as described herein.

67.    Pursuant to § 100.20(5) of the Wisconsin UTPA, Plaintiff and members of the Nationwide Class are entitled to recover twice the amount of their damages, together with costs and attorneys' fees.

BLOOD HURST & O'REARDON, LLP

22    Case No.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

## COUNT II

### Violations of the Consumers Legal Remedies Act
### Civil Code §1750 *et seq.*

### (for Plaintiff and California Sub-Class Members)

68.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs above, as if fully set forth herein.

69.     Plaintiff brings this claim individually and on behalf of the California Sub-Class.

70.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act").  Plaintiff is a "consumer" as defined by California Civil Code § 1761(d).  Defendants' Ginkgold Products are "goods" within the meaning of the Act.

71.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Ginkgold Products:

(5)     Representing that [the Ginkgold Products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

*     *     *

(7)     Representing that [the Ginkgold Products are] of a particular standard, quality or grade . . . if [they are] of another.

*     *     *

(9)     Advertising goods . . . with intent not to sell them as advertised.

*     *     *

(16)     Representing that [the Ginkgold Products have] been supplied in accordance with a previous representation when [they have] not.

00078756

BLOOD HURST & O'REARDON, LLP

72.     Defendants violated the Act by representing and failing to disclose material facts on the Ginkgold Products' labeling and packaging and associated advertising, as described above, when they knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

73.     Pursuant to § 1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

74.     Pursuant to § 1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.

75.     A copy of the letter is attached hereto as Exhibit A.

76.     Defendants have failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate.

77.     Defendants' conduct is fraudulent, wanton and malicious.

78.     Pursuant to § 1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

### COUNT III

### Violation of Business & Professions Code § 17200, *et seq.*

### (for Plaintiff and California Sub-Class Members)

79.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs above, as if fully set forth herein.

CLASS ACTION COMPLAINT

80.     Plaintiff brings this claim individually and on behalf of the California Sub-Class.

81.     Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."   For the reasons discussed above, Defendants have violated each of these provisions of Business & Professions Code § 17200.

82.     In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) under the CLRA, Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law, including breach of express warranty.   Defendants' above-described wrongful acts and practices constitute actual and constructive fraud within the meaning of Civil Code §§ 1572 and 1573, as well as deceit, which is prohibited under Civil Code §§ 1709 and 1711.

83.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.   Such conduct is ongoing and continues to this date.

84.     Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding the Ginkgold Products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

85.     As stated in this complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers.   Defendants' acts and omissions

BLOOD HURST & O'REARDON, LLP

25       Case No.

00078756

1  also violate and offend the public policy against engaging in false and misleading

2  advertising, unfair competition and deceptive conduct towards consumers.  This

3  conduct constitutes violations of the unfair prong of Business & Professions

4  Code § 17200, *et seq.*

5  86.    There were reasonably available alternatives to further Defendants'

6  legitimate business interests, other than the conduct described herein.

7  87.    Business & Professions Code § 17200, *et seq.*, also prohibits any

8  "fraudulent business act or practice."

9  88.    Defendants' actions, claims, nondisclosures and misleading

10  statements, as more fully set forth above, were also false, misleading and/or

11  likely to deceive the consuming public within the meaning of Business &

12  Professions Code § 17200, *et seq.*

13  89.    Defendants' advertising, labeling and packaging as described

14  herein, also constitutes unfair, deceptive, untrue and misleading advertising.

15  90.    Defendants' conduct caused and continues to cause substantial

16  injury to Plaintiff and the other Class members.  Plaintiff has suffered injury in

17  fact and has lost money as a result of Defendants' unfair conduct.

18  91.    As a result of its deception, Defendants have been able to reap

19  unjust revenue and profit.

20  92.    Unless restrained and enjoined, Defendants will continue to engage

21  in the above-described conduct.  Accordingly, injunctive relief is appropriate.

22  93.    Plaintiff, on behalf of herself, all others similarly situated, and the

23  general public, seeks restitution of all money obtained from Plaintiff and the

24  members of the Class collected as a result of unfair competition, an injunction

25  prohibiting Defendants from continuing such practices, corrective advertising,

26  and all other relief this Court deems appropriate, consistent with Business &

27  Professions Code § 17203.

28  ///

BLOOD HURST & O'REARDON, LLP

26        Case No.

CLASS ACTION COMPLAINT

1

BLOOD HURST & O'REARDON, LLP

## COUNT IV

### Breach of Express Warranty

94.    Plaintiff repeats and re-alleges the allegations contained in the Paragraphs above, as if fully set forth herein.

95.    Plaintiff brings this claim individually and on behalf of the Class.

96.    Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

97.    At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

98.    Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Ginkgold Products.  The terms of that contract include the cognitive health benefit promises and affirmations of fact made by Defendants on the Ginkgold Products' labels and packages as described above.  These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

99.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

100.    Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the Ginkgold Products that could provide the cognitive health and brain function benefits as represented and described above.

CLASS ACTION COMPLAINT

1   101.   As a result of Defendants' breach of their warranty, Plaintiff and the

2   Class have been damaged in the amount of the purchase price of the Ginkgold

3   Products they purchased.

**PRAYER FOR RELIEF**

4   Wherefore, Plaintiff prays for a judgment:

5

6   A.   Certifying the Class as requested herein;

7   B.   Awarding Plaintiff and the proposed Class members damages;

8   C.   Awarding restitution and disgorgement of Defendants' revenues to

9   Plaintiff and the proposed Class members;

10   D.   Awarding declaratory and injunctive relief as permitted by law or

11   equity, including: enjoining Defendants from continuing the unlawful practices

12   as set forth herein, and directing Defendants to identify, with Court supervision,

13   victims of its conduct and pay them all money it is required to pay;

14   E.   Ordering Defendants to engage in a corrective advertising

15   campaign;

16   F.   Awarding attorneys' fees and costs; and

17   G.   Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

18

19   Plaintiff hereby demands a trial by jury of all issues so triable.

20

21   Dated: July 7, 2015          BLOOD HURST & O'REARDON, LLP
                                 TIMOTHY G. BLOOD (149343)
22                               THOMAS J. O'REARDON II (247952)
                                 SARAH BOOT (253658)
23

24                               By:     *s/ Timothy G. Blood*
                                       TIMOTHY G. BLOOD
25

26                               701 B Street, Suite 1700
                                 San Diego, CA  92101
27                               Tel: 619/338-1100
                                 619/338-1101 (fax)
                                 tblood@bholaw.com
                                 toreardon@bholaw.com
28                               sboot@bholaw.com

28          Case No.

00078756

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CARPENTER LAW GROUP
TODD D. CARPENTER (234464)
402 West Broadway, 29th Floor
San Diego, CA  92101
Tel: 619/756-6994
619/756-6991 (fax)
todd@carpenterlawyers.com

*Attorneys for Plaintiff*

BLOOD HURST & O'REARDON, LLP

00078756

29        Case No.

CLASS ACTION COMPLAINT