Kevin W. Alexander, Esq.  (SBN:  175204)
Thomas R. Watson, Esq.  (SBN:  227264)
Michael P. Bryant, Esq.  (SBN:  173440)
Brian T. Selogie, Esq.  (SBN: 281805)
Gordon & Rees LLP
633 W. Fifth Street, 52nd Floor
Los Angeles, CA  90071
Telephone:  (213) 576-5000
Facsimile:  (213) 680-4470
kalexander@gordonrees.com
twatson@gordonrees.com
mbryant@gordonrees.com
bselogie@gordonrees.com

Attorneys for Defendants
SCHWABE NORTH AMERICA, INC. and NATURES WAY PRODUCTS, LLC

**Gordon & Rees LLP**
**101 W. Broadway Suite 2000**
**San Diego, CA 92101**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SONNER on behalf of Herself and All others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCHWABE NORTH AMERICA, INC. and NATURE'S WAY PRODUCTS, LLC,<br><br>Defendants. | CASE NO.  5:15-cv-01358-VAP-SP<br><br>**DEFENDANTS SCHWABE NORTH AMERICA, INC., AND NATURE'S WAY PRODUCTS, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[CONCURRENTLY FILED WITH: DECLARATION OF ALAN F. SCHATZBERG, M.D.; DEFENDANTS' REPLY TO SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED FACTS]<br><br>Date: January 9, 2017<br>Time: 2:00 p.m.<br>Courtroom: 780<br>Judge: Virginia A. Philips |

1 _____   Magistrate Judge: Sheri Pym

2

3 **TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

4     Defendants Schwabe North America, Inc., and Nature's Way Products, LLC

5 hereby submit this Reply to Plaintiff's Opposition to Defendant's Motion for

6 Summary Judgment or Partial Summary Judgment pursuant to Rule 56 of the

7 Federal Rules of Civil Procedure.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT

**TABLE OF CONTENTS**

Page

I.   Introduction ..................................................................................... 1

II.  Argument ......................................................................................... 3

     A.   Plaintiff's Wisconsin UTPA claim fails. ................................ 3

     B.   Plaintiff lacks standing as to Ginkgold Max. ........................ 4

     C.   Defendants' claims are supported by credible science. ......... 5

     D.   This is a lack of substantiation case. ..................................... 9

     E.   Plaintiff cannot meet her burden. ......................................... 11

          1.   Plaintiff cannot show that Defendants' claims are "provably false." .......................................................... 11

          2.   Plaintiff cannot succeed by merely claiming that Defendants' claims are "misleading." ...................... 12

     F.   *Mullins* should not be followed. .......................................... 12

     G.   Plaintiff's claims are pre-empted. ........................................ 15

     H.   Plaintiff's breach of warranty claim fails. ........................... 16

III. Conclusion ...................................................................................... 17

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Aloudi v.Intramedic Research Grp., LLC,*
5   2015 WL 4148381 (N.D. Cal. Jul. 9, 2015)........................................................11

6

*Bitton v. Gencor Nutrientes, Inc.,*
  654 Fed. Appx. 358 (9th Cir. June 28, 2016)...................................................13

7

*Bradach v. Pharmavite LLC,*
8   case no. 14-3218-GHK, Dkt. nos. 202 and 210 (C.D. Cal. July 6,
  2016 and August 25, 2016) .............................................................................16

9

Carrea v. Dreyer's Grand Ice Cream, Inc.,
10   No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371, 2011 WL
  159380 (N.D. Cal. Jan. 10, 2011) ....................................................................5

11

*Celotex Corp. v. Catrett,*
12   477 U.S. 317, 106 S. Ct. 2548, 2553 (1986).....................................................4

13

*Eckler v. Wal-Mart Stores, Inc.,*
  No. 12-CV-00727, LAB-MDD, 2012 WL 5382218, 2012 U.S. Dist.
14   LEXIS 157132 (S.D. Cal. Oct. 31, 2012) ...............................................2, 9, 11

15

*Fraker v. Bayer Corp.,*
  No. CV F 08 -1564 AWI GSA, 2009 WL5865687, 2009 U.S. Dist.
16   LEXIS 125633 (E.D. Cal. Oct. 2, 2009) .................................................2, 9, 16

17

Granfield v. NVIDIA Corp.,
  No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678, 2012 WL
18   2847575 (N.D. Cal. July 11, 2012) ...................................................................4

19

*Hammock v. Nutramarks, Inc.,*
  No. 15-cv-02056, 2016 U.S. Dist. LEXIS 124240 (S.D. Cal. Sep.
20   12, 2016)......................................................................................................13, 14

21

*Johns v. Bayer Corp.,*
  No. 09cv1935 AJB (DHB), 2013 WL 1498965, 2013 U.S. Dist.
22   LEXIS 51823 (S.D. Cal. Apr. 10, 2013)..........................................2, 9, 11, 12, 13

23

*Kwan v. SanMedica Int'l, LLC,*
  2015 WL 848868 (N.D. Cal. Feb. 25, 2015) ..................................................11

24

*Low v. LinkedIn Corp.,*
25   900 F.Supp. 2d 1010 (N.D. Cal. 2012) ..............................................................3

26

*McCrary v. Elations Co., LLC,*
  No. 13-cv-00242, 2013 U.S. Dist. LEXIS 173592 (C.D. Cal. July
27   12, 2013)......................................................................................................13, 14

28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-ii-

*Mlejnecky v. Olympus Imaging America Inc.,*
No. 2:10-CV-02630 JAM-KJN, 2011 U.S. Dist. LEXIS 42333
(N.D. Cal. Apr. 19, 2011)................................................................5

*Mullins v. Premier Nutrition Corp.,*
No. 13-cv-01271-RS, 2016 WL 1534784, 2016 U.S. Dist. LEXIS
51139 (N.D. Cal. Apr. 15, 2016) .................................2, 12, 13, 14, 15

*Sateriale v. R.J. Reynolds Tobacco Co.,*
697 F.3d 777 (9th Cir. 2012).......................................................3

*Scheuerman v. Nestle Healthcare Nutrition, Inc.,*
No.2:10-cv-03684-FSH-PS, 2012 WL 2916827, 2012 U.S. Dist.
LEXIS 99397 (D.N.J. July 16, 2012)...........................................10

*Stanley v. Bayer Healthcare LLC,*
No. 11cv862-IEG(BLM), 2012 WL 1132920, 2012 U.S. Dist.
LEXIS 47895 (S.D. Cal. Apr. 3, 2012)......................................2, 9

*Waite v. AII Acquisition Corp.,*
2016 U.S. Dist. LEXIS 107820 (S.D. Fla. July 11, 2016.)..............13

*Zakaria v. Gerber Prods. Co.,*
No. 15-cv-00200, 2015 U.S. Dist. LEXIS 92654 (C.D. Cal. July 14,
2015)............................................................................13, 14

**Statutes**

21 United States Code
Section 343-1................................................................16

Business & Professions Code
Section 17200................................................................17

Civil Code
Section 1750................................................................17

Wisconsin Statutes
Section 100.20................................................................17

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-iii-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Schwabe North America, Inc., and Nature's Way Products, LLC (collectively "Schwabe" or "Defendants") filed their Motion for Summary Judgment or Partial Summary Judgment (or "Motion") on September 14, 2016. (Dkt. No. 50.)  Plaintiff Kathleen Sonner ("Plaintiff") filed her Opposition to Defendants' Motion on November 14, 2016.  (Dkt. No. 71.)  Plaintiff's Opposition fails to controvert the material case-dispositive facts established by Defendants.

Rather, Plaintiff's Opposition mischaracterizes and misconstrues applicable legal standards to avoid the application of analogous and controlling precedent. Plaintiff also impugns the credibility of Defendants' eminently qualified expert, and thereby attempts in vain to create a triable issue of fact through a "battle of the experts."  Nevertheless, Plaintiff cannot carry her burden through a battle of the experts in this case.  Instead, she must demonstrate that Defendants' marketing claims are *provably false*.  Plaintiff has failed to do so.  Ultimately, Plaintiff's Opposition represents nothing more than an effort to misdirect this Court's attention from the utter dearth of facts or legal authorities supporting her claims.

Defendants' marketing claims are simple, straight-forward, substantiated by scientific studies and decidedly not false.  Defendants' labels state: "For mental sharpness, memory & concentration"; "Supports memory, concentration and mental activity"; "Supports healthy circulation to the brain and the body's extremities"; and "Provides antioxidant protection against free radicals".  (*See,* Exhibit "A" to Bryant Decl., Dkt. No. 50-24.)  Defendants do not claim that the products cure or slow the progress of dementia or Alzheimer's.  Defendants do not claim that the products make someone smarter.  To the contrary, the labels include a disclaimer which indicates that various statements have "not been evaluated by the Food & Drug Administration.  This product is not intended to treat, cure, or prevent any disease."  (*Id.*). The benefits of ginkgo biloba have been recognized

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

for thousands of years— it is one of the most clinically and frequently tested supplements in the world.  (Schatzberg Decl. at ¶¶13-15).  Defendants' claims are, in fact, supported by credible scientific evidence.

As established in Defendants' Motion, Plaintiff cannot prove the required elements of reliance, causation, or injury, on her claim for violation of the Wisconsin Unfair Trade Practices Act, Wis. Stat. 100.20 ("Wisconsin UTPA").  On Opposition, Plaintiff has all but conceded that claim.[1]  In addition, Plaintiff lacks standing to bring any claim regarding the Ginkgold Max product, which she admittedly did not purchase.  Furthermore, Plaintiff's "disease claims" are expressly pre-empted by the Food, Drug, and Cosmetic Act.  Lastly—and contrary to Plaintiff's claims—this lawsuit is virtually identical to a long line of cases holding that Plaintiff cannot pursue false advertising claims on the basis that defendants' marketing "lacks substantiation."[2]

In an effort to escape the standard established in those cases, Plaintiff relies on *Mullins v. Premier Nutrition Corp.,* No. 13-cv-01271-RS, 2016 WL 1534784, 2016 U.S. Dist. LEXIS 51139 (N.D. Cal. Apr. 15, 2016).  Nevertheless, *Mullins* is an aberration—its application would eviscerate years of well-reasoned precedent, and it would contravene the policy behind the legislature's ban on lack of substantiation cases brought by private plaintiffs.  For all of the foregoing reasons, this Court should grant summary judgment or partial summary judgment in favor of Defendants.

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

---

[1] Plaintiff has also omitted her Wisconsin UTPA claim from her Motion for Class Certification.

[2] *See, e.g., Johns v. Bayer Corp.,* No. 09cv1935 AJB (DHB), 2013 WL 1498965, 2013 U.S. Dist. LEXIS 51823 (S.D. Cal. Apr. 10, 2013);  *Stanley v. Bayer Healthcare LLC*, No. 11cv862-IEG(BLM), 2012 WL 1132920, 2012 U.S. Dist. LEXIS 47895 (S.D. Cal. Apr. 3, 2012) (BLM);  *Fraker v. Bayer Corp.,* No. CV F 08-1564 AWI GSA, 2009 WL5865687, 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009); and *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-00727, LAB-MDD, 2012 WL 5382218, 2012 U.S. Dist. LEXIS 157132 (S.D. Cal. Oct. 31, 2012).

## II.    <span style="font-variant: small-caps;">ARGUMENT</span>

### A.    Plaintiff's Wisconsin UTPA claim fails.

In its Order on Defendants' Motion to Dismiss, this Court held that a plaintiff alleging damages under the Wisconsin UTPA must "prove *actual reliance on the allegedly deceptive or misleading statements*, and that the misrepresentation was an *immediate cause of the injury-producing conduct*."  (*See* Order on Schwabe Motion to Dismiss, Dkt. No. 26 at p.12; attached to Selogie Decl. to Motion for Summary Judgment as Exhibit "C") (emphasis added); (*citing Sateriale v. R.J. Reynolds Tobacco Co.,* 697 F.3d 777, 793-94 (9th Cir. 2012); (*Low v. LinkedIn Corp.,* 900 F.Supp. 2d 1010, 1026 (N.D. Cal. 2012)).

As noted in Defendants' Motion, Plaintiff's Wisconsin UTPA claim relies *entirely* on the representation by Schwabe that the Ginkgold products contain "Clinical Ginkgo Extract."  (Complaint at ¶¶63-67).  Indeed, the *only* advertising claim which Plaintiff challenges under the Wisconsin UTPA is the use of the "Clinical Ginkgo Extract" language.  (*Id.*).  Nevertheless, the words "Clinical Ginkgo Extract" do not appear on the packaging for the Ginkgold product Plaintiff purchased.  Plaintiff has conceded that fact, both in her deposition and in her response to Defendants' Separate Statement in support of Summary Judgment. (*See,* Exhibit B to Selogie Decl. to Motion for Summary Judgment at 131:6-9; Plaintiff's Response to Defendants' Statement of Undisputed Fact Nos. 9-11, Dkt. No. 71-3.)  In addition, Plaintiff has conceded that she does not recall relying on the word "clinical" in purchasing the Ginkgold products.  (*Id.*).  Ultimately, Plaintiff is not complaining that the Ginkgold product does not contain clinical ginkgo biloba extract in a significantly effective amount.  (*Id.*).  Plaintiff's concessions obviate her Wisconsin UTPA claim.

On Opposition, Plaintiff contends that her UTPA claim should stand because this Court has already found that Plaintiff has "adequately pleaded reliance." (Opposition at 15:4-14.)  In doing so, Plaintiff grossly mischaracterizes this

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1  Court's Order.  Indeed, nowhere in its Order on Defendants' Motion to Dismiss did

2  this Court address the issue of reliance on the "Clinical Ginkgo Extract" language.

3  (Exhibit C to Selogie Decl. to Motion for Summary Judgment).  Plaintiff's

4  contentions are a half-hearted, futile attempt to rescue her UTPA claim.

5  Notwithstanding Plaintiff's meek Opposition, the evidence shows that there was no

6  reliance.  Likewise, there is no genuine issue regarding the fact that the alleged

7  misrepresentation—that Ginkgold contains "Clinical Ginkgo Extract"—was an

8  "immediate cause of the injury-producing conduct."  (Exhibit C to Selogie Decl. to

9  Motion for Summary Judgment).

10        Further, Plaintiff offers no evidentiary support—which she is required to do

11  at this stage of the litigation—for her argument that the word "clinical" is

12  perceived by consumers to have a substantially similar meaning as "advanced."

13  (Opposition at 15:20).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.

14  Ct. 2548, 2553 (1986)) ("One of the principal purposes of the summary judgment

15  rule is to isolate and dispose of factually unsupported  claims or defenses, and we

16  think it should be interpreted in a way that allows it to accomplish this purpose.").

17  Therefore, this Court should grant summary judgment on Plaintiff's Wisconsin

18  UTPA claim.

19        **B.    Plaintiff lacks standing as to Ginkgold Max.**

20        Plaintiff concedes that she never purchased Ginkgold Max.  (Exhibit B to

21  Selogie Decl. to Motion for Summary Judgment at 30:5-9; 70:19-24; 71:7-9;

22  Plaintiff's Response to Defendants' Statement of Undisputed Fact No. 8.) Various

23  federal courts in this state have held, as a matter of law, that a plaintiff lacks

24  standing to assert false advertising claims related to a product she did not purchase.

25  *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 U.S. Dist. LEXIS

26  98678, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (holding that "when a

27  plaintiff asserts claims based both on products that she purchased and products that

28  she did not purchase, claims relating to products not purchased must be dismissed

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-4-

1   for lack of standing"); *Mlejnecky v. Olympus Imaging America Inc.,* No. 2:10-CV-

2   02630 JAM-KJN, 2011 U.S. Dist. LEXIS 42333 at *11-*12 (N.D. Cal. Apr. 19,

3   2011) (dismissing claims based on products not purchased for failure to allege

4   economic injury under the UCL); *Carrea v. Dreyer's Grand Ice Cream, Inc.,* No. C

5   10-01044 JSW, 2011 U.S. Dist. LEXIS 6371, 2011 WL 159380, at *3 (N.D. Cal.

6   Jan. 10, 2011) (dismissing claims based on products other than those purchased by

7   the plaintiff).  Ginkgold and Ginkgold Max are different products.  They have

8   different labels and different ingredient concentrations.  Ultimately, Plaintiff lacks

9   standing to pursue claims related to the Ginkgold Max product that she never

10  purchased.

11   **C.    Defendants' claims are supported by credible science.**

12          Plaintiff's Opposition goes to great lengths to undermine the credibility of

13  Defendants' expert, Alan Schatzberg, M.D.  Plaintiff contends that Dr. Schatzberg

14  "conducts an unscientific analysis in violation of the accepted scientific protocol

15  and rules set forth in the Reference Manual on Scientific Evidence.  He also makes

16  a number of assertions that are flatly incorrect or ill informed."  (Opposition at

17  10:8-11.)  Plaintiff further contends that Dr. Schatzberg "ignores the principles of a

18  proper analysis of scientific studies," he "cherry-picks" findings, and he

19  "apparently does not know" that there is no "already proven treatment" that

20  prevents cognitive decline in aging.  (Opposition at 10:19-21.)  Plaintiff's

21  mudslinging, although relentless, is entirely ineffectual.

22          As an initial matter, Dr. Schatzberg's qualifications are beyond reproach.

23  Dr. Schatzberg co-authored a landmark JAMA-published study regarding the

24  efficacy of ginkgo biloba in treating dementia, and he has authored and edited a

25  number of eminent texts and treatises regarding psychopharmacology, including

26  the Manual of Psychopharmacology and the Textbook of Psychopharmacology.

27  (Declaration of Alan Schatzberg, M.D., in support of Reply (or "Schatzberg Reply

28  Decl.") at ¶2).  Dr. Schatzberg has been the Co-Editor-in-Chief of the Journal of

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1   Psychiatric Research for over 15 years, and he has sat or currently sits on a number

2   of editorial boards, including the Archives of General Psychiatry, Journal of

3   Clinical Psychopharmacology, Psychoneuroendocrinology, Biological Psychiatry,

4   and others. (*Id.*). Dr. Schatzberg is the Past President of the American Psychiatric

5   Association, the American College of Neuropsychopharmacology and the Society

6   of Biological Psychiatry, and has served as the Secretary-General of the

7   International Society of Psychoneuroendocrinology (ISPNE). (*Id.*). Plaintiff's

8   various contentions that Dr. Schatzberg is "ill informed" or "unscientific" are

9   ridiculous.

10         Furthermore, Plaintiff's Opposition, including the Declaration of Beth Snitz,

11   M.D, does nothing to change Dr. Schatzberg's well-reasoned opinions. Indeed, Dr.

12   Schatzberg has stated that "[t]here is, in fact, scientific evidence that demonstrates

13   the efficacy of Ginkgo biloba extract in supporting cognitive function, as well as

14   its generally accepted approval for the treatment of cognitive disorders throughout

15   the world. (Schatzberg Reply Decl. at ¶4). According to Dr. Schatzberg,

16   "[c]redible scientific evidence exists to support the statement that Ginkgo biloba is

17   'for mental sharpness, memory & concentration' and available scientific literature

18   has shown that consuming Ginkgo biloba supports 'mental activity' and 'cognitive

19   function.'" (*Id.*). Dr. Schatzberg also relies on a number of credible studies which

20   Plaintiff baselessly maligns as "decades-old, industry funded, and biased."

21   (Opposition at 10:20-21.) Contrary to Plaintiff's contentions, Dr. Schatzberg

22   explains that all of the studies Defendants rely upon "were performed in a manner

23   and using a methodology such that the results of those studies are credible,

24   accurate, and reliable to a reasonable degree of scientific certainty." (*Id.* at ¶6).

25         Dr. Schatzberg addresses Plaintiff's gripe with older studies by explaining

26   that "[a] general phenomenon in psychotropic research as evidenced particularly in

27   antidepressant and antipsychotic research is the steadily increasing placebo

28   response rates observed over the past 40 years and a decreasing likelihood of

demonstrating differences between active and putatively active drugs and placebo." (*Id.* at 8, *citing* Walsh BT et. al., JAMA 287: 1840-1847, 2002; Papakostas GI, Fava M Eur Neuropsychopharmacol 19 (1): 34-40, 2009). Dr. Schatzberg also counters Dr. Snitz's criticism of industry-funded studies on the grounds that "her position ignores that virtually all FDA approved drugs begin with industry-funded studies. Industry funded studies are not inherently biased. They are conducted under pre-specified guidelines, including random-assignment double-blind conditions." (*Id.* at 9).

Further, Dr. Schatzberg notes that Dr. Snitz provides inconsistent opinions on the issue of "failed v. negative" studies, and she mischaracterizes the findings of the Cochrane reviews. (*Id.* at ¶¶11-16). Dr. Schatzberg acknowledges that "[m]any of the Cochrane reviews have been criticized in high level, peer-reviewed journals" and that Dr. Snitz herself seems to cherry-pick her own favorable findings. *Id.* at 16. According to Dr. Schatzberg, the very Cochrane review cited by Dr. Snitz indicates that "[o]f the four most recent trials to report results, three found no difference between Ginkgo biloba and placebo, and one reported very large treatment effects *in favour of Ginkgo biloba*." (*Id.* at 16 (emphasis added)). Dr. Schatzberg highlights the fact that "this Cochrane review presents three failed studies, one positive study in favour of Ginkgo biloba and zero negative studies." (*Id.*).

In addition, Plaintiff relies on selective language from a number of other studies in an effort to discredit Dr. Schatzberg. Plaintiff's criticisms are misleading and disingenuous. For example, Plaintiff cites to Vellas, et al., (2012) for the proposition that findings showed "no significant difference between G. biloba (EGb 761) and placebo groups after five years in the incidence of Alzheimer's. That is, the treatment was not effective for prevention of dementia." (Plaintiff's Response to Defendants' SSUF No.8.) As an initial matter, Vellas, et al., addressed the efficacy of ginkgo biloba in protecting subjects from Alzheimer's

-7-

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

disease. (*See, e.g.,* CC Ex. 26 (Vellas 2012) at 858.)  Defendants make no representation that the Ginkgold products are intended to treat, cure, or prevent Alzheimer's or any other disease.  In fact, they expressly disclaim otherwise.  (*See,* Exhibit "A" to Bryant Decl., Dkt. No. 50-24.)  Furthermore, Vellas, et al., acknowledged that "[t]he effect of long-term exposure to ginkgo biloba extract *could be clarified through further investigation*."  (*Id.*).  (emphasis added).

Likewise, Plaintiff cites to Canter and Ernst (2007) for the conclusion that there is "no convincing evidence from randomized clinical trials for a robust positive effect of G. Biloba ingestion upon any aspect of cognitive function in healthy young people, after either acute or longer term administration."  (Plaintiff's Response to Defendants' SSUF No.9.)  However, Canter and Ernst (2007) also acknowledge that the efficacy of ginkgo biloba in preventing or delaying cognitive decline remains unclear.  According to Canter and Ernst, "[f]uture research should concentrate on the important questions or *whether the extract prevents and/or delays the onset of cognitive decline* and whether it is indeed effective in the treatment of those diagnosed with dementia."  (Plaintiff's CC Ex. 21 (Canter and Ernst 2007) at 277).  (emphasis added).  The other studies relied upon by Plaintiff, including Laws, et al. (2012), Solomon, et al. (2002),Nathan, et al., (2002), and Carlson, et al. (2007) acknowledged the existence of credible scientific evidence supporting the efficacy of ginkgo biloba for cognitive function, memory, and concentration.[3]

---

[3] Laws, et al. notes that "two prior meta-analyses concluded that there was consistent evidence showing positive effects for ginkgo biloba and one prior meta-analysis reached a "conflicting conclusion[]."  Carlson, et al. (2007) also acknowledged the existence of credible scientific evidence supporting the efficacy of ginkgo biloba for cognitive function, memory, and concentration: "Stough and colleagues reported short term cognitive improvements in young healthy adults (mean age 30 years) taking 120 mg of EGb 761 vs placebo in two short-term memory measures."  (*See,* Schatzberg Decl.; Defendants' Reply to Plaintiff's Additional SSUF).

1    In light of those findings, there is simply no evidence that Defendants'

2    marketing claims are false.  Certainly, the "totality of the evidence" does not, as

3    Plaintiff suggests, affirmatively establish that ginkgo biloba does not offer the

4    advertised effects.  Plaintiff cannot show that Defendants' claims are "provably

5    false" nor can she show that the "vast weight of the competent evidence" supports

6    her allegations.  Therefore, this Court should grant summary judgment in favor of

7    Defendants.

8         **D.    This is a lack of substantiation case.**

9         As discussed in Defendants' Motion, this case is the most recent in a series

10   of virtually identical—and entirely baseless—false advertising lawsuits against

11   Schwabe and other supplement producers.  *See, e.g., Johns v. Bayer Corp.,* No.

12   09cv1935 AJB (DHB), 2013 U.S. Dist. LEXIS 51823 (S.D. Cal. Apr. 10, 2013);

13   *Stanley v. Bayer Healthcare LLC*, No. 11cv862-IEG(BLM), 2012 U.S. Dist.

14   LEXIS 47895 (S.D. Cal. Apr. 3, 2012) (BLM);  *Fraker v. Bayer Corp.,* No. CV F

15   08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009); and

16   *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-00727, LAB-MDD, 2012 U.S. Dist.

17   LEXIS 157132 (S.D. Cal. Oct. 31, 2012).  In each of those cases, the court held

18   that, even where a plaintiff introduces contrary scientific evidence, false

19   advertising claims cannot succeed where the gravamen of the allegations is that

20   defendants lack substantiation.  (*Id.*).  In this case, Plaintiff argues that there is "no

21   scientifically credible" evidence to support Schwabe's advertising claims.

22   (Complaint at ¶33; Exhibit A to Selogie Decl.)  To bolster her argument, Plaintiff

23   notes that researchers have concluded that evidence supporting the efficacy of

24   Ginkgo biloba is "inconsistent and unreliable."  (Complaint at ¶41; Exhibit A to

25   Selogie Decl. to Motion for Summary Judgment).  Plaintiff's own allegations show

26   that her claims sound in lack of substantiation.

27        Plaintiff nevertheless contends on Opposition that this is not a lack of

28   substantiation case because she "does not merely take the position that

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-9-

1  [Defendants'] claims are unsubstantiated.  Instead, she relies on the large body of

2  scientific evidence that demonstrates [Defendants'] claims are false, misleading,

3  and deceptive."  (Opposition at 17:6-10 (citations omitted)).  In so contending,

4  Plaintiff characterizes this as a case in which, rather than merely claiming that

5  Defendants lack substantiation, she has *proved* that Defendants lack substantiation.

6  Plaintiff's argument is circular.  It relies on semantics and misdirection, but she

7  cannot disguise the gravamen of her claims.

8      In *Scheuerman v. Nestle Healthcare Nutrition, Inc.,* No.2:10-cv-03684-FSH-

9  PS, 2012 U.S. Dist. LEXIS 99397 (D.N.J. July 16, 2012), plaintiff alleged under

10  the UCL and CLRA that defendant's advertising claims that its product was

11  "clinically shown" to provide certain benefits was "affirmatively false."

12  *Scheuerman* at *5, 2012 U.S. Dist. LEXIS 99397 at *17.  The *Scheuerman* court

13  granted defendant's Motion for Summary Judgment, and held that "[d]espite

14  Plaintiffs' arguments otherwise…the core allegations of fraud in the Complaint are

15  clearly grounded in a prior substantiation theory of liability."  *Id.*  This case is just

16  like *Scheuerman*.  Plaintiff's claims are "clearly grounded in a prior substantiation

17  theory of liability."  *Id.*

18      On Opposition, Plaintiff attempts to distinguish *Scheuerman*.  Plaintiff

19  contends that, unlike the *Scheuerman* plaintiff, she has "demonstrate[d] that there

20  is no scientific support for [Defendants]… advertising claims."  (Opposition at

21  18:17-20).  As discussed in the Declaration of Alan Schatzberg, M.D., the

22  considerable scientific evidence supporting the efficacy of ginkgo biloba directly

23  undercuts Plaintiff's claim.  (*See,* Declaration of Alan Schatzberg, M.D. (or

24  "Schatzberg Decl.") in support of Motion for Summary Judgment).  In light of the

25  wealth of the credible scientific evidence supporting the efficacy of ginkgo biloba,

26  Plaintiff cannot possibly "demonstrate that there is no scientific support" for

27  Defendants' claims.

28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-10-

1   Plaintiff and her expert can disagree with Dr. Schatzberg all they want—
2   mere disagreement is insufficient for Plaintiff to carry her burden on summary
3   judgment in this case.  Ultimately, the gravamen of Plaintiff's Complaint is that
4   Defendants lack support for their advertising claims.  Such claims are
5   impermissible when brought by a private plaintiff.  Accordingly, this Court should
6   grant summary judgment in favor of Defendants.

**E.   Plaintiff cannot meet her burden.**

*1.   Plaintiff cannot show that Defendants' claims are "provably false."*

10   In the event that Plaintiff's claims are not barred by the lack of
11   substantiation doctrine, Plaintiff must *prove* falsity or deception in order to
12   succeed.  *See generally, Johns v. Bayer Corp.,* 2013 U.S. Dist. LEXIS 51823
13   (dismissing Plaintiff's false advertising claims which were impermissibly based on
14   "lack of substantiation"); *see also, Aloudi v.Intramedic Research Grp., LLC,* 2015
15   WL 4148381, at **3-6 (N.D. Cal. Jul. 9, 2015) (dismissing complaint alleging that
16   dietary supplement did not work as advertised where plaintiff failed to allege
17   scientific evidence specifically disproving claimed benefits); *Kwan v. SanMedica*
18   *Int'l, LLC,* 2015 WL 848868, at *5 (N.D. Cal. Feb. 25, 2015) *(appeal pending)*
19   (dismissing false advertising claims where plaintiff did not allege "that a study
20   exists showing [the represented product] benefits are categorically impossible to
21   achieve"); *Eckler v. Wal-Mart Stores, Inc.,* 2012 WL 5382218, at *3 (S.D. Cal.
22   Nov. 1, 2012) (dismissing false advertising claims against glucosamine
23   manufacturer where complaint failed to allege that scientific evidence actually
24   disproved advertising claims).

25   Indeed, courts have consistently held that advertising claims are "false or
26   misleading" only when the plaintiff can show that those claims are "*provably*"
27   false, meaning that the claims have "actually been disproved."  *Johns v. Bayer*
28   *Corp.,* 2013 U.S. Dist. LEXIS 51823 at *163-168 (emphasis added).  The standard

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1  from *Johns* and its progeny is unequivocal.  In light of contrary scientific evidence,

2  Plaintiff cannot show that Defendants' advertising claims have "actually been

3  disproved."  Plaintiff's Opposition accomplishes nothing in that regard. The

4  science Plaintiff relies on is far from conclusive.  (*See* Plaintiff's Additional SSUF

5  and Defendants' Reply to the same.)  Therefore, summary judgment is warranted

6  in favor of Defendants.

7           2.     *Plaintiff cannot succeed by merely claiming that Defendants'*
                  *claims are "misleading."*
8

9           Likewise, Plaintiff cannot defeat summary judgment by merely pleading that

10  Defendants' marketing claims are "misleading" because she disagrees with the

11  strength or sufficiency of Defendants' evidence.  In *Johns*, the plaintiffs "fervently

12  argue[d] that they d[id] not have to prove that [defendant's] representations [were]

13  in fact false to proceed under the UCL and CLRA."  *Johns* at *166.  The *Johns*

14  plaintiffs "simultaneously argue[d] that their evidence [was] not limited to

15  criticisms about the amount of substantiation [defendants] had, but that the

16  advertisements are not true…"  *Johns* at *166-167.  The *Johns* court described

17  Plaintiff's argument as "confusing at best" and "circular."  *Id.*  The court held that

18  where defendant's advertising was not provably false, plaintiff's allegation that

19  such claims were nevertheless "misleading" was nothing more than an

20  impermissible "attempt to plead around the "lack of substantiation" bar to

21  recovery."  *Johns* at *167.  This case is just like *Johns*.  Plaintiff impermissibly

22  attempts to "plead around" a clear bar to recovery.  Plaintiff's arguments are

23  transparent and unavailing.

24      **F.    *Mullins* should not be followed.**

25           In an attempt to end-run the authorities which expressly prohibit her claims,

26  Plaintiff relies on *Mullins v. Premier Nutrition Corp.,* 2016 U.S. Dist. LEXIS

27  51139.  In *Mullins*, the court expanded the scope of permissible false advertising

28  claims, holding that a plaintiff could defeat summary judgment by showing that the

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT

"vast weight of the competent evidence establishes that [defendant's] health claims are false." *Id.* at *17, 2016 U.S. Dist. LEXIS 51139 at *58. The holding in *Mullins* is contrary to years of precedent and it would eviscerate the legislature's ban on lack of substantiation cases brought by private plaintiffs.[4] Furthermore, a review of subsequent precedent reveals that *Mullins* has been cited in only three published opinions. (*See, Bitton v. Gencor Nutrientes, Inc.,* 654 Fed. Appx. 358, 363 (9th Cir. June 28, 2016); *Hammock v. Nutramarks, Inc.,* No. 15-cv-02056, 2016 U.S. Dist. LEXIS 124240, at *7-8 (S.D. Cal. Sep. 12, 2016); *Waite v. AII Acquisition Corp.,* 2016 U.S. Dist. LEXIS 107820, at *14 (S.D. Fla. July 11, 2016.)) None of those citing decisions confirm the summary judgment standard purportedly established in *Mullins*. Therefore, *Mullins* should not be followed.

On Opposition, Plaintiff cites to a number of cases which she contends support the contention that *Mullins* "is merely a statement— not an expansion— of permissible false advertising claims in California." (Opposition at 19:8-10 *citing Hammock v. Nutramarks, Inc.,* 2016 U.S. Dist. LEXIS 124240, at *7-8; *Zakaria v. Gerber Prods. Co.,* No. 15-cv-00200, 2015 U.S. Dist. LEXIS 92654, at *6-8 (C.D. Cal. July 14, 2015); *McCrary v. Elations Co., LLC,* No. 13-cv-00242, 2013 U.S. Dist. LEXIS 173592, at *5 (C.D. Cal. July 12, 2013)). As a threshold issue, each of the cases cited by Plaintiff addressed the sufficiency of Plaintiff's allegations in the context of a motion to dismiss. (*See, e.g., Hammock,* 2016 U.S. Dist. LEXIS 124240, at *6 (noting that "[s]hould Plaintiffs prove this allegation later on, Defendants' Products would likewise be proven to be ineffective."); *Zakaria*, 2015 U.S. Dist. LEXIS 92654, at *6 (holding that "[t]he allegations of the FAC are sufficient to meet these tests under California law as it has been interpreted by district courts here.")). At the summary judgment stage, Plaintiff cannot rely on

---

[4] *See, Johns* at *48 n.61)(noting that "Plaintiffs also make an argument that they need not show that Bayer's statements are false, only that they are 'likely to deceive.' This argument is circular. Plaintiffs contend that Bayer's statements that the Products' ingredients 'support prostate health' and that selenium may reduce the risk of prostate cancer are 'likely to deceive' because there is 'no credible evidence' or 'inadequate' evidence to support them. Thus, Plaintiffs' 'likely to deceive' claims are all squarely based on purported lack of substantiation.").

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

the adequacy of her allegations— she must provide evidence which creates a genuine issue of fact. She has failed to do so. Furthermore, the holdings from *Hammock*, *Zakaria*, and *McCrary* fail to show that *Mullins* provides the controlling standard applicable to summary judgment on false advertising claims in California. Indeed, both *Zakaria* and *McCrary* were decided prior to *Mullins*, and they cannot bear on the accuracy or the appropriateness of the *Mullins* standard. (*See generally, Zakaria v. Gerber Prods. Co.,* 2015 U.S. Dist. LEXIS 92564, at 6-8; *McCrary v. Elations Co., LLC*, 2013 U.S. Dist. LEXIS 173592, at *5.) *Hammock* mentions *Mullins* only in dicta. (*See, Hammock v. Nutramarks, Inc.,* 2016 U.S. Dist. LEXIS 124240, at *7-8). In light of the foregoing, the cases cited by Plaintiff are inapposite, and they should be disregarded by this Court.

Even if this Court chooses to apply *Mullins*, Plaintiff cannot prevail. On Opposition, Plaintiff relies on *Mullins* for the proposition that a plaintiff can defeat summary judgment by showing: "(1) defendant's expert is unreasonable or no expert believes the product confers a benefit; or (2) the vast weight of the competent scientific evidence establishes that the health claims are false." (Opposition at 19:5-8 *citing Mullins* 2016 U.S. Dist. LEXIS 51139, at *57-58.) In this case, Plaintiff cannot accomplish either of the foregoing tasks. Despite her best efforts, Plaintiff cannot show that Defendants' expert, Alan Schatzberg, M.D., is "unreasonable." Rather, Dr. Schatzberg has relied on myriad credible scientific studies that support the efficacy of ginkgo biloba. (*See generally,* Schatzberg Decl. and Schatzberg Reply Decl.). Dr. Schatzberg has also shown that the criticisms leveled by Plaintiff's expert, Beth Snitz, M.D., plainly lack merit. (Schatzberg Reply Decl. at ¶¶ 8-16). To the contrary, Dr. Schatzberg has shown that Plaintiff and her expert rely on selective language and discrete findings from a number of studies to support their case. In *Mullins*, the defendant offered only a few studies in support of its claims, and even conceded that at least one of those studies suffered from "terrible" methodology. *Id.* at *16, 36, 2016 U.S. Dist. LEXIS

-14-

1   51139 at *30, 65.  Such defects are conspicuously absent from the evidence relied

2   upon by Defendants in this case.

3       In addition, Plaintiff cannot show that "the vast weight of the competent

4   scientific evidence establishes that the health claims are false."  (Opposition at

5   19:5-8; *citing Mullins* 2016 U.S. Dist. LEXIS 51139, at *57-58).  Alan Schatzberg,

6   M.D., has declared and established that "in light of the vast weight of the

7   competent scientific evidence, the studies cited by Plaintiff do not negate the

8   findings of the credible studies which show that, to a reasonable degree of

9   scientific certainty, Ginkgo biloba extract can effect a significant and clinically

10  relevant improvement in cognitive function, memory, concentration,

11  psychopathology, functional measures, and quality of life." (Schatzberg Decl. at

12  ¶49).  Despite Plaintiff's criticism, Dr. Schatzberg is eminently qualified.  His

13  opinions are sound, well-reasoned, and they rely on credible scientific evidence.

14      Lastly, the *Mullins* court held that "even if a reasonable expert testifies that

15  the scientific literature is *equivocal*, a plaintiff may prevail under the UCL and

16  CLRA if she proves that the expert is nevertheless incorrect."  *Mullins* at *58.

17  (emphasis added).  There is nothing "equivocal" about the scientific literature in

18  this case— it shows that "[c]redible scientific evidence exists to support the

19  statement that Ginkgo biloba is "for mental sharpness, memory & concentration"

20  and available scientific literature has shown that consuming Ginkgo biloba

21  supports "mental activity" and "cognitive function.""  (Schatzberg Reply Decl. at

22  ¶4).  Consequently— even under *Mullins*— Plaintiff cannot survive summary

23  judgment in this case.

24      **G.   Plaintiff's claims are pre-empted.**

25      In their Opposition to Plaintiff's Motion for Class Certification, Defendants

26  contend that Plaintiff is pursuing a preempted "disease claim."  (Defendants'

27  Opposition to Motion for Class Certification, Dkt. No. 67, at 6-8).   Plaintiff's

28  Opposition only confirms Defendants' contention. (*See* Opposition at 3:12-13

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1   (asserting that Defendants consider Ginkgold to be a "drug []in violation of the

2   Federal Food and Drug Act" instead of a nutritional supplement.)).   For all the

3   reasons set forth in Defendants' Opposition to Plaintiff's Motion for Class

4   Certification, however, allegations regarding "disease claims" are preempted by

5   the Food Drug and Cosmetic Act.  (*See* 21 U.S.C. § 343-1(a)(5); *Gallagher*, 2015

6   U.S. Dist. LEXIS 29326, at *19 ("[P]laintiffs' claims based on the argument that

7   'supports heart health' is an impermissible disease claim are preempted . . . .");

8   *Bradach v. Pharmavite LLC*, case no. 14-3218-GHK, Dkt. nos. 202 and 210 (C.D.

9   Cal. July 6, 2016 and August 25, 2016) (denying plaintiff's motion for class

10   certification concerning because the plaintiff lacked standing to assert preempted

11   "disease claims" with respect to a vitamin E dietary supplement.)).  Consequently,

12   preemption provides additional grounds for summary judgment in favor of

13   Defendants.

14   **H.    Plaintiff's breach of warranty claim fails.**

15   Plaintiff's Opposition contends that her breach of warranty claim should

16   stand because "issues of material fact exist as to whether [Defendants] agreed to

17   sell to Plaintiff a product that would improve her cognitive health and then did not

18   deliver on its promise…"  (Opposition at 23:22-25).   Plaintiff's Opposition does

19   nothing to cure the fatal defect that her express warranty claim is "predicated on

20   the unsupported legal proposition that an advertising claim creates both a

21   contractual obligation as to the claim's truthfulness *and* a contractually enforceable

22   duty of the advertiser to have at hand scientific evidence to substantiate the claim."

23   *Fraker* at *24.  The *Fraker* court refused to presume that any such obligation

24   exists.  *Id.*  Again, Defendants' advertising claims have relied on "credible

25   scientific evidence" at all times during the relevant class period.  (*See, e.g.,*

26   Schatzberg Decl. at ¶47).  Plaintiff's contention that "the totality of the evidence

27   demonstrates that Ginkgold does nothing for cognitive health" is simply false.

28

**Gordon & Rees LLP**
**101 W. Broadway Suite 2000**
**San Diego, CA 92101**

-16-

1   Therefore, this Court should grant summary judgment in favor of Defendants on

2   Plaintiff's breach of express warranty claim.

3   **III.   CONCLUSION**

4        Based on all the foregoing Defendants respectfully request an order granting

5   summary judgment as to Plaintiff's Complaint for (1) violation of the Wisconsin

6   Unfair Trade Practices Act, Wis. Stat. 100.20 ("Wisconsin UTPA"); (2) violation

7   of the California Unfair Competition Law, California Business & Professions Code

8   section 17200, *et seq.* ("UCL"); (3) violation of the California Consumers Legal

9   Remedies Act, California Civil Code section 1750, *et seq.* ("CLRA"); and (4)

10  breach of express warranty.  In the alternative, Defendants request an order

11  granting partial summary judgment as to each of Plaintiff's individual claims.

12

13

14  Dated:  December 21, 2016              GORDON & REES LLP

15

16

17                                        By:   */k/ Kevin W. Alexander*
                                                Kevin W. Alexander
18                                              Thomas R. Watson
                                                Michael P. Bryant
19                                              Brian T. Selogie
                                                *Attorneys for Defendants*
20                                              SCHWABE NORTH AMERICA,
                                                INC. and NATURES WAY
21                                              PRODUCTS, LLC

22

23

24

25

26

27

28

Gordon & Rees LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1122169/30745714v.1

-17-