UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA



FILED
CLERK, U.S. DISTRICT COURT
FEB 2, 2017
CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

| | |
|---|---|
| Kathleen Sonner,<br><br>                Plaintiff,<br>v.<br>Schwabe North America, Inc. et al.,<br><br>                Defendants. | EDCV 15-1358-VAP (SPx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [DOC. NO. 50]** |

On September 14, 2016, Defendants Schwabe North America, Inc., and Nature's Way Products, LLC, filed a motion for summary judgment as to all claims of Plaintiff Kathleen Sonner. (Doc. No. 50.) On November 14, 2016, Plaintiff filed her Opposition to Defendants' Motion for Summary Judgment. (Doc. No. 69-1.) On December 21, 2016, Defendants filed their Reply. (Doc. No. 78.) After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced at the January 30, 2017 hearing, the Court GRANTS the Motion.[1]

## I. BACKGROUND

Plaintiff initiated the present action against Defendants on July 7, 2015. (Doc. No. 1.) Defendant Schwabe North America, Inc., markets and distributes Ginkgold Advanced Ginkgo Extract ("Ginkgold") and Ginkgold Max Advanced Ginkgo Extract Max 120 mg ("Ginkgold Max"). (Doc. No. 78-1 at 3.) In her operative complaint, Plaintiff alleges a

---

[1] As the Court GRANTS Defendants' Motion for Summary Judgment, the Court DENIES as moot Plaintiff's Motion for Class Certification (Doc. No. 53-1). See Newton v. Bank of America, No. 2:14-cv-03714, 2015 WL 10435907, at *8 (C.D. Cal. May 12, 2015).

variety of claims against Defendants on behalf of herself and a class of persons "who purchased [Defendants' products] Ginkgold or Ginkgold Max in the United States."[2] (Doc. No. 1 at 18.) Plaintiff's Complaint asserts four claims for relief against Defendants: (1) violation of the Wisconsin Unfair Trade Practices Act, Wis. Stat. section 100.20 (Wisconsin UTPA"); (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, et seq. ("UCL"); (3) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code section 1750, et seq. ("CLRA"); and (4) breach of express warranty. (Doc. No. 1 at 21-28.)

## II. LEGAL STANDARD

A motion for summary judgment or summary adjudication shall be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharm., Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] Plaintiff excluded from the class "Defendants and their officers, directors and employees, and those who purchased Ginkgold or Ginkgold Max for the purpose of resale." (Doc. No. 1 at 18.)

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1102–03 (9th Cir. 2000). "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." Id. at 1103.

If the moving party carries its burden of production, however, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256; Nissan Fire, 210 F.3d at 1103. The non-moving party must make an affirmative showing on all matters in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 14:144. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir.

1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III.   UNCONTROVERTED FACTS

To the extent certain facts or conclusions are not mentioned in this Order, the Court has not relied on them in reaching its decision.  The Court has considered independently the admissibility of the evidence that both parties submitted and has not considered irrelevant or inadmissible evidence.  The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of resolving Defendants' Motion for Summary Judgment.  See L.R. 56-3.

Defendant Schwabe North America, Inc., markets and distributes Ginkgold and Ginkgold Max.  (Doc. No. 78-1 at 3.)  Both products contain a variety of Ginkgo biloba extract known as EGb 761.  (Id. at 3-4, 13.)  From at least July 2011 through August 2016, every label and package of Ginkgold and Ginkgold Max stated that the products are for "Mental Sharpness," "Memory" and "Concentration."  (Id. at 13.)  Travis Borchardt, Schwabe's corporate designee, testified at his deposition that the product's advertised benefits to "[m]ental sharpness, memory, [and] concentration" are "the primary reasons for Ginkgold."  (Doc. No. 52-4 at 5-6.)

In August 2014, Plaintiff purchased Ginkgold and used the product for approximately two to three weeks.[3]  (Doc. Nos. 50-1 at 4, 50-28 at 13, 78-1 at 4.)  Ultimately, she stopped taking Ginkgold because she "wasn't feeling any different."

---

[3] Although Defendants argue in their Opposition to Plaintiff's Motion for Class Certification that it "appears likely that Plaintiff did not even purchase the product as she claims" (Doc. No.67 at 18), they concede Plaintiff's purchase of the product and offer no facts to dispute her alleged reason for discontinuing use for the purposes of the Motion for Summary Judgment.  (See Doc. Nos. 50-1 at 9, 78-1 at 4.)

(Doc. Nos. 50-1 at 4; 50-28 at 14.) Plaintiff never purchased Ginkgold Max. (Doc. No. 50-1 at 4.)

## IV. DISCUSSION

Defendants argue that Plaintiff lacks standing to pursue claims as to Ginkgold Max and that they are otherwise entitled to summary judgment on each of Plaintiff's claims. The Court addresses Defendants' arguments, in turn, below.

### A. Plaintiff's Standing as to Ginkgold Max Claims

As noted above, Plaintiff never purchased Ginkgold Max. (Doc. No. 50-1 at 4.) Defendants argue that, as Plaintiff never purchased or used Ginkgold Max, she cannot allege she was misled by the Ginkgold Max label or that Ginkgold Max caused her any injury. Hence, Defendants contend that Plaintiff lacks both Article III and statutory standing as to any claims related to Ginkgold Max.

"[A] Plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." Brown v. Hain Celestial Grp., Inc., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012); see also Astiana v. Dreyer's Grand Ice Cream, Inc., No. C-11-2910, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (noting that, in cases that decide whether individual plaintiffs have standing to represent purchasers of other products, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased"); Dysthe v. Basic Research LLC, No. 09–8013, 2011 WL 5868307 (C.D. Cal. June 13, 2011) (holding that a plaintiff did not have standing over claims related to a product she did not purchase because "[h]aving a few common ingredients is simply not enough to show the Products are the same or even 'nearly identical'").

Here, the products in question are essentially identical. Both Ginkgold and Ginkgold Max are marketed under the same contested benefit—that they are for "Mental Sharpness," "Memory" and "Concentration"—and feature the same active ingredient, EGb 761. The only difference between the products is the amount of EGb 761. As the Parties here dispute whether <u>any amount</u> of EGb 761, or Ginkgo biloba, provides cognitive benefits, the amount of the ingredient in each product is irrelevant. Accordingly, the Court holds that the products are substantially similar and Plaintiff has standing to assert claims related to both products.

### B. Wisconsin UTPA Claim

In her complaint, Plaintiff alleges that Defendants violated the Wisconsin UTPA by misrepresenting on the labels of their products that the products contain "Clinical Ginkgo Extract." Misrepresentation claims under the Wisconsin law require that "1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be false; and 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage." <u>Tietsworth v. Harley-Davidson Inc.</u>, 270 Wis. 2d 146, 157 (2004); <u>see also</u> <u>Wyatt v. Phillip Morris USA, Inc.</u>, No. 09-c-0597, 2013 WL 4046334, at *4-6 (E.D. Wis. Aug. 8, 2013) (noting a plaintiff's claim under the Wisconsin Deceptive Trade Practices Act was "virtually indistinguishable" from his claim under the Wisconsin UTPA and applying the above standard to both claims).

Plaintiff now concedes that the words "Clinical Ginkgo Extract" do not appear on the packaging of the Ginkgold product she purchased. (Doc. No. 78-1 at 5.) As Plaintiff has failed to establish that Defendants misrepresented that their product contained "Clinical Ginkgo Extract," Plaintiff cannot show that she relied on the alleged

misrepresentation. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's UTPA claim.[4]

### C. California UCL and CLRA claims

California's UCL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code sections 17200, 17500. Each prong is separately actionable. Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009). The CLRA generally prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code section 1770.

"[C]laims under these California statutes are governed by the 'reasonable consumer' test." Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived. The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id. (internal citations omitted). Plaintiff contends that Defendants violated both the UCL and CLRA through deceptive advertising that suggested that using Ginkgold and Ginkgold Max would provide cognitive benefits for consumers.

---

[4] Plaintiff's argument that her UTPA claim should survive summary judgment on the ground that the phrase "Clinical Ginkgo Extract" is substantially similar to "Advanced Ginkgo Extract" is without merit. As noted above, the "substantially similar" standard may provide standing for Plaintiffs to assert claims relating to products she did not purchase. Defendants, however, do not challenge Plaintiff's standing as to this claim; they attack her UTPA claim on the merits. Moreover, Plaintiff has offered no evidence in support of her claim that the two phrases are substantially similar.

### 1. Lack of Substantiation

As a threshold issue, the Parties vigorously dispute whether Plaintiffs UCL and CLRA claims qualify as "lack of substantiation" claims and thus are barred under California law. See Stanley v. Bayer Healthcare LLC, No. 11–862, 2012 WL 1132920, at *3 (S.D. Cal. Apr.3, 2012) (granting defendant's motion for summary judgment on a plaintiff's UCL and CLRA claims because, under California law, only prosecuting authorities—not private individuals—can bring an action for lack of substantiation); Fraker v. Bayer Corp., No. 08-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct.6, 2009) (dismissing UCL and CLRA claims because "there is no private remedy for unsubstantiated advertising" and explaining that, in order to maintain a false advertising action, "Plaintiff will be required to adduce evidence sufficient to present to a jury to show that Defendant's advertising claims with respect to the Product are actually false; not simply that they are not backed up by scientific evidence"). "The purpose of allowing only prosecuting authorities, and not private persons, to seek substantiation of advertising claims under Cal. Bus. & Prof. Code § 17508 is to 'prevent undue harassment of advertisers' and provide 'the least burdensome method of obtaining substantiation for advertising claims.'" Stanley, 2012 WL 1132920, at *3.

"[I]n a false advertising case under the UCL and CLRA, the plaintiff 'bears the burden of proving that the defendant's advertising claim is false or misleading.'" Johns v. Bayer Corp., No. 09-cv-1935, 2013 WL 1498965, at *30 (S.D. Cal. Apr. 10, 2013) (citing Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc., 107 Cal. App. 4th 1336, 1342 (Cal. Ct. App. 2003)); see also Eckler v. Wal-Mart Stores, Inc., No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012) ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are

'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former.").

Here, Plaintiffs do more than merely claim that Defendants lack substantiation for their advertising claims; they provide affirmative evidence of scientific reports concluding that Ginkgo biloba does not appear to provide cognitive health benefits. See Eckler, 2012 WL 5382218, at *3 (denying a motion to dismiss because, "[t]o the extent [the plaintiff] points to studies that allegedly debunk the purported benefits of glucosamine hydrochloride, she isn't just saying those benefits are unsubstantiated. She is saying they are positively false."). Plaintiff's expert, Dr. Beth E. Snitz, analyzed several clinical studies and meta-analyses to conclude that "Ginkgo biloba is no more effective than [a] placebo for improving cognitive functioning or preventing cognitive decline." (Doc. No. 53-10 at 4.) Of course, Defendants counter Snitz's conclusion through the testimony of their own expert, Dr. Alan F. Schatzberg, and the reports he cites. (Doc. No. 50-3.) Following his own review of clinical studies and meta-analyses, Schatzberg concludes that "credible scientific evidence . . . exists, to support the statement that Ginkgo biloba is 'for mental sharpness, memory & concentration' and available scientific literature has shown that consuming Ginkgo biloba supports 'mental activity' and 'cognitive function.'" (Doc. No. 50-3 at 22.) The relevant inquiry, therefore, is whether a reasonable juror could find that Plaintiff has proven that Defendants' advertising claims are false or misleading despite Defendants' evidence to the contrary. Johns v. Bayer Corp., 2013 WL 1498965, at *30, *32-33; see also Mullins v. Premier Nutrition Corp., 178 F. Supp. 3d 867, 893 (N.D. Cal. 2016) ("[I]f the scientific record is equivocal, then summary judgment is appropriate because no reasonable jury could conclude that the representations are false or misleading. . . . Thus, the first question is whether a jury could logically conclude that the scientific evidence is unequivocal or such that [Defendants have] used it in a misleading fashion.").

### 2. Battle of the Experts

"A fundamental principle of evidence-based medicine is that the strength of medical evidence supporting a therapy or strategy is hierarchical. When ordered from strongest to weakest, systematic review of randomized trials (meta-analysis) is at the top, followed by single randomized trials, systematic reviews of observational studies, single observational studies, physiological studies, and unsystematic clinical observations." FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 1, 723-24 (3d ed. 2011), available at http://www.fjc.gov/public/pdf.nsf/lookup/SciMan3D01.pdf/$file/SciMan3D01.pdf; see also In re Neurontin Mktg. & Sales Practices Litig., 712 F.3d 21, 48-49 (1st Cir. 2013) (holding that "the totality of the evidence" supported a holding that the plaintiff "met its burden by showing that [a drug] was ineffective" because "numerous [double-blind randomized controlled trials] indicated the drug is ineffective" and the defendant's "claimed evidence of [the drug's] efficacy came from less convincing sources").

Snitz contends that Defendants, and more specifically Schatzberg, unreasonably ignore this hierarchy to promote a false conclusion that Ginkgo biloba provides cognitive benefits. In support of that argument, Snitz relies on three quantitative meta-analyses: Canter & Ernst (2007), Laws et al. (2012), and Birks & Evans (2009). "Meta-analyses pool the results of clinical trials 'to arrive at a single figure to represent the totality of the studies reviewed.' . . . Among types of medical evidence, meta-analysis is considered the strongest." Mullins, 178 F. Supp. 3d at 884 (citing REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, supra, at 607, 723).

The Canter & Ernst (2007) review concluded that "collated evidence from 15 randomised clinical trials provides no convincing evidence that *G. biloba* extracts ingested either as a single dose or over a longer period has a positive effect on any aspect of

10

cognitive performance in healthy people under the age of 60 years." (Doc. No. 53-15 at 14.) The Laws et al. (2012) review included data from ten randomized clinical trials and concluded that "[t]he key findings from this meta-analysis are that *G. biloba* has no significant impact on memory, executive function or attention with all effect sizes non-significant and effectively at zero." (Doc. No. 53-10 at 9-10.) The Birks & Evans (2009) review included data from 36 double-blind randomized clinical trials and concluded that "[t]here is no convincing evidence that Ginkgo biloba is efficacious for dementia and cognitive impairment." (Doc. No. 53-13 at 7.) In its "Main results" and "Plain Language Summary" sections, the Birks & Evans (2009) review noted that "[o]f the four most recent trials to report results, three found no difference between Ginkgo biloba and placebo, and one reported very large treatment effects in favour of Ginkgo biloba." (Doc. Nos. 53-13 at 7.)

Snitz also relies upon two recent clinical studies: the National Institutes of Health-funded Ginkgo Evaluation of Memory Study of 2009 ("GEM Study") and the GuidAge Study of 2012 ("Vellas Study"). Courts have noted that randomized clinical trials are "the gold standard for determining the relationship of an agent to a health outcome." Mullins, 178 F. Supp. 3d at 882. In GEM, the authors determined that there was "no difference between G. biloba and placebo on change over time in any of the five measured cognitive domains (memory, attention, executive functions, language and visuospatial abilities)." (Doc. No. 53-10 at 7-8.) Likewise, the Vellas study determined that there was "no significant difference between G. biloba and placebo groups after five years in the incidence of [Alzheimer's Disease]" and that, therefore, "the treatment was not effective for prevention of dementia." (Doc. No. 53-10 at 8.) Finally, Snitz cites a smaller and earlier review, Solomon et al. (2002), which determined that, "when taken following the manufacturer's instructions, ginkgo provides no measureable benefit in memory or related cognitive function to adults with healthy cognitive function." (Doc. No. 53-17 at 2.)

11

Schatzberg, for his part, supports his conclusion by relying upon the Mix & Crews (2000) report, which summarizes a meta-analysis and five scientific studies. Schatzberg notes that the Hopfermuller (1994) "meta-analysis of 11 controlled trials of *Ginkgo biloba* extract LI 1370 (which has the same standardized formula as EGb 761) in patients suffering from 'cerebral insufficiency' confirmed the effectiveness of the extract (as compared to controls) in seven studies, while in one study, the findings were inconclusive." (Doc. No. 50-3 at 11 (citing Hopfermuller, 1994); Ex. Q.) In addition, Schatzberg states that the five scientific studies noted in the Mix & Crews (2000) report "show[] that patients who have received Ginkgo biloba extract have been 'noted to exhibit improvements in such cognitive functions as memory (e.g., short-term, verbal [Grassel, 1992; Hofferberth, 1994; Semlitsch et al., 1995]), learning rate (Grassel, 1992), speed of information processing (Allain et al., 1993), speed of responses (Rai et al., 1991), and attention (Hofferberth, 1994), as compared to placebo controls." (Doc. No. 50-3 at 11; Ex. Q). Snitz criticizes Schatzberg's reliance on the meta-analysis and the five studies, which were all completed in the 1990s, in lieu of the more-recent reviews she relies on.[5] (Doc. No. 71-1 at 2-3.) Snitz, however, offers no support for the assertion that experts must always rely upon the most recent studies to reach a conclusion and otherwise offers no criticism of the various studies' methods or design in completing their review.[6]

---

[5] At the hearing on this Motion, Plaintiff's counsel argued that the meta-analysis relied upon by Defendants was updated in 2009 to reach a different conclusion. This characterization is not supporting in the record.

[6] As noted below, Snitz offers evidence that a later Mix & Crews study from 2002 is susceptible to an inference of potential bias in its conclusions because the study was funded by members of the industry with an interest in the outcome of the study, including Defendant Nature's Way Products, LLC. She makes no such claim as to the Mix & Crews (2000) review.

Moreover, Schatzberg cites to several other clinical studies, including recent ones, that are consistent with the Hopfermuller (1994) meta-analysis and the other studies cited in the Mix & Crews (2000) report. For example, Herrschaft et al. (2012) concluded that treatment with Ginkgo biloba extract "resulted in a significant and clinically relevant improvement in cognition, psychopathology, functional measures and quality of life of patients and caregivers." (Doc. Nos. 50-3 at 14, 50-7 at 2.) Grass-Kapanke et al. (2011) found that the results of their study showed "consistent numerical superiority of EGb 761 in cognitive tests, indicating that there is a signal for improved memory and concentration in EGb 761-treated patients." (Doc. Nos. 50-3 at 15, 50-8 at 5.) Finally, Le Bars et al. (1997) concluded that Ginkgo biloba extract was "safe and appears capable of stabilizing and, in a substantial number of cases, improving the cognitive performance and social functioning." (Doc. Nos. 50-3 at 13-14, 50-6 at 2.)

The only criticism that Snitz offers of the Herrschaft et al. (2012), Grass-Kapanke et al (2011), and Le Bars et al (1997) studies is that they conflict with the Birks & Evans (2009) review, which Snitz argues is the most authoritative source of review and synthesis.[7] Taking issue with the strength or significance of the studies, however, is not enough to prove their falsity. See Scheuerman v. Nestle Healthcare Nutrition, Inc., No. 10-3684, 2012 WL 2916827, at *8 (D. N.J. July 17, 2012) ("While Plaintiffs' experts take issue with the strength and significance of these studies, their criticisms do not satisfy Plaintiffs' burden of demonstrating that the 'clinically shown' advertising claims are false or misleading."). As Plaintiff has fail to offer "principled critiques of each of the studies finding beneficial effects of [Defendants' products]," she has not met her burden to

---

[7] The Birks & Evans review was a "Cochrane systematic review," and Snitz states such reviews "are highly regarded in the international health sciences community as authoritative, reliable and independent." (Doc. No. 53-10 at 10.) Schatzberg concedes that Cochrane reviews are "venerable," but notes that "[m]any of the Cochrane reviews have been criticized in high level, peer-reviewed journals." (Doc. No. 78-2 at 10.)

13

established that "a jury could logically conclude that the scientific evidence is unequivocal." Mullins, 178 F. Supp. 3d at 893, 896.[8]

### 3. *Mullins*

The Parties dispute whether Mullins, 178 F. Supp. 3d 867 (N.D. Cal. 2016), compels a different result. It does not. In Mullins, the plaintiff brought almost identical UCL and CLRA claims against a defendant that had marketed its product as beneficial for keeping joints flexible and lubricated. Id. at 889. The defendant offered expert testimony and scientific evidence that its product did produce the advertised health benefits, and the plaintiff countered with her own expert testimony and scientific evidence that the product did not produce such benefits. Id. at 882-87. The court determined that the plaintiff had met her burden to establish that a reasonable jury could find the defendant's claims were provably false by offering "principled, supported critiques of the studies" relied upon by the defendants. Id. at 895-96 (noting that a jury could "rationally conclude" that the defendant's expert's opinion "is beyond the pale" because the plaintiff offered evidence that all of the studies the expert relied upon were either influenced by industry bias or improperly designed). Additionally, the court noted that the plaintiff was entitled to recover under a theory that the representations were "misleading" because a reasonable jury could conclude that the "vast weight of the competent evidence establishes that th[e] health claims are false." Id. 895, 896-898; see also id. at 898 ("[B]ecause a jury could

---

[8] Through Snitz's testimony, Plaintiff has effectively critiqued some of the evidence relied upon by Schatzberg. Specifically, Plaintiff points out that the Kaschel (2011) and Mix & Crews (2002) studies were funded by a segment of the pharmaceutical industry that produces Ginkgo biloba products, including Defendant Nature's Way Products, LLC. (Doc. No. 71-1 at 4.) Plaintiff also suggests that both of those studies were flawed due to improper methodology, such as the studies' failure to report pre-treatment baseline test data and inadequately describing the statistical testing for baseline differences. (Doc. No. 71-1 at 4-6.) Those criticisms, however, do not establish that the remaining studies Defendants rely upon are flawed or unreliable.

14

logically decide that [plaintiff's expert's] testimony and his studies <u>foreclose any possibility</u> that Joint Juice drinkers will benefit from the substance, [Defendant's] motion for summary judgment must be denied.") (emphasis added).

Here, as in <u>Mullins</u>, both sides have produced expert testimony and scientific research in support of their claims. Unlike in <u>Mullins</u>, however, Plaintiff has not offered a "principled, supported critique" of "each of the studies finding beneficial effects of [Defendants' products]." <u>Id.</u> at 895. As noted above, Plaintiff's only criticism of Schatzberg's reliance on the Hopfermuller (1994) meta-analysis and the five other studies cited in the Mix & Crews (2000) report—Rai et al. (1991); Grassel (1992); Allain et al. (1993); Hofferberth (1994); Semlitsch et al. (1995)—is that they are less recent than the reviews relied upon by Snitz. Similarly, Plaintiff's only criticism of Schatzberg's reliance on the Herrschaft et al. (2012), Grass-Kapanke et al. (2011), and Le Bars et al. (1997) studies is that those studies are inconsistent with the studies and reviews relied upon by Snitz. Plaintiff falls short of challenging the methodology, structure, or independence of any of those studies. As a result, Plaintiff's criticisms of the meta-analysis and studies relied upon by Schatzberg are insufficient to allow a reasonable juror conclude that there is no scientific support for Defendants' claims. Put differently, Plaintiff's criticisms are insufficient to meet her burden to prove falsity. <u>See</u> <u>Mullins</u>, 178 F. Supp. 3d at 895 (stating that a plaintiff can prove a defendant's "claims are literally false if a reasonable jury concludes that <u>all</u> *reasonable* scientists agree" that the products do not provide the advertised health benefits) (emphasis added); <u>see also Scheuerman</u>, 2012 WL 2916827, at *8 ("A demonstration of 'limited support' does not satisfy Plaintiffs' burden to prove falsity."). Likewise, Plaintiff has not established that a reasonable juror could conclude Defendants' claims were misleading because her criticisms fall short of "foreclos[ing] any possibility" that Defendants' products provide the advertised benefits. <u>Mullins</u>, 178 F. Supp. 3d at 898.

15

Plaintiff, therefore, has not demonstrated that Defendants misled their customers. "Plaintiff['s] expert[], if believed by a reasonable jury, demonstrates that [Defendants'] scientific substantiation for its product claims is not strongly substantiated. However, this does not establish a trial[able] issue of fact that [Defendants'] . . . advertising claim[s] [are] false or misleading." Id. at *9. Accordingly, the Court holds that Defendants are entitled to summary adjudication as to Plaintiff's UCL and CLRA claims.

D. **Breach of Express Warranty**

Plaintiff's final claim is that "Defendants breach the terms of [their] contract, including the express warranties, with Plaintiff and the Class by not providing the Ginkgold Products that could provide the cognitive health and brain function benefits as represented and described above." (Doc. No. 1 at 28.)

"Under California law a claim for breach of express warranty requires a showing of 'the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury.'" Stanley, 2012 WL 1132920, at *10. "Here, Plaintiff has failed to identify any 'express warranty' made by Defendant[s] regarding [her use of Ginkgold]." Id. Nothing on Ginkgold's packaging warranted that Plaintiff would "feel[] . . . different" after two to three weeks of use of the product. (Doc. Nos. 50-1 at 4; 50-28 at 14.) Further, as noted above, Plaintiff has failed to establish that Defendants breached any promises made through their advertising, as the relevant scientific evidence before the Court is equivocal as to the effects of consuming Ginkgo biloba. Defendants, therefore, are entitled to summary adjudication on Plaintiff's express warranty claim.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment as to all of Plaintiff's claims. The Court DENIES as moot Plaintiff's motion for class certification.

**IT IS SO ORDERED.**

Dated: 2/2/17

Virginia A. Phillips
Chief United States District Judge