**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Kathleen Sonner,

          Plaintiff,

          v.

Schwabe North America, Inc. et al.,

          Defendants.

5:15-cv-01358-VAP-SPx

**Order GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. 189)**

Before the Court is Plaintiff's Unopposed Motion for Preliminary Class Action Settlement ("Motion").  (Dkt. 189).[1]

Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15 and GRANTS the Motion.

## I.    BACKGROUND

**A.    Procedural History**

The proposed class action settlement before the Court arises out of a five-year false advertising lawsuit.  (Motion, at 3).  On July 7, 2015, Plaintiff filed this action alleging Defendants Schwabe North America, Inc. and

---

[1] Defendants filed their Notice of Non-Opposition on September 3, 2020. (Dkt. 193).

United States District Court
Central District of California

Nature's Way Products, LLC (collectively, "Defendants") falsely advertised the cognitive benefits of their ginkgo biloba products, Ginkgold and Ginkgold Max (the "Ginkgold products").  (*Id.*).  According to Plaintiff, Defendants marketed the Ginkgold products as providing cognitive health benefits when there was no actual significant effect.  (*Id.*).  Plaintiff alleged claims under California's Unfair Competition Law ("UCL"), California's Consumers Legal Remedies Act ("CLRA"), Wisconsin's Unfair Trade Practices Act ("UTPA"), and for breach of express warranty.  (*Id.*; Dkt. 189-2, at 3).

The parties participated in extensive briefing and motion practice throughout the litigation, including: two motions to dismiss, a motion for summary judgment, briefing at the Ninth Circuit Court of Appeal, class certification briefing, and other discovery related motions.  (Motion, at 3-7).  The parties also produced and analyzed over 172,000 pages of documents and conducted Rule 30(b)(6) and expert depositions (three of which occurred during the COVID-19 pandemic).  (*Id.*).  The parties participated in three full-day mediation sessions, one before Honorable Edward A. Infante (Ret.) on June 8, 2016, and two with Scott Markus, Esq. on February 13, 2020, and April 1, 2020.  (*Id.*, at 6).  Mediation statements were submitted for each session.  (*Id.*).

The parties finally reached a resolution on July 27, 2020.  (Brown, Declaration ("Decl."), Dkt 189-2, ¶ 31).  Over the course of several weeks thereafter, the parties drafted, negotiated, and revised the Settlement Agreement that is currently before the Court.  (Motion, at 7).

**B.    Settlement Class**

The proposed Settlement Class is defined as:

All people who purchased in California Ginkgold or Ginkgold Max from July 7, 2011 through the date of preliminary approval, and all people who purchased in the United States other than in California Ginkgold or Ginkgold Max from January 1, 2016 through the date of preliminary approval.

(*Id.*).  The proposed class consists of approximately 365,000 units of Ginkgold.  (*Id.*, at 18).

**C.    Settlement Terms**

The parties prepared a joint settlement agreement ("Settlement Agreement" or "SA").  (Dkt. 186).  The Settlement Agreement establishes a settlement fund of $3,375,000.  (*Id.*, § 2.2).  Settlement Class Members will receive $18.00 or $33.00 for each unit of Ginkgold or Ginkgold Max they purchased, depending on the product variation.  (*Id.*, § 2.2.1).  The reimbursement amounts are based on a blended average of actual retail prices paid by Settlement Class Members and represent close to a full refund, which is the monetary relief sought in this action.  (*Id.*).

Settlement class members are entitled to reimbursements for all qualifying purchases for which they can provide proof of purchase.  (*Id.*).  Otherwise, Settlement class members can claim up to 3 reimbursements for

United States District Court
Central District of California

their qualifying Ginkgold purchases by filling out a claim form and declaring under penalty of perjury that they made the claimed purchase(s).  (*Id.*).

The deadline to submit claims is thirty (30) days after the date first set by the Court at the final fairness hearing and will be stated in the full class notice, on the settlement website, and on the claim form.  (*Id.*, § 1.5).  If the amount of the net settlement fund exceeds the aggregate of the valid claims, each claim will be increased by up to five (5) times the submitted amount.  (*Id.*, § 2.2.1).

Class Counsel may seek up to 33% of the settlement fund for attorneys' fees, or $1,113,750.  (*Id.*, § 2.4).  The Settlement Agreement also entitles Plaintiff to a class representative award of $5000.  (*Id.*).

All notice and administration expenses (capped at $400,000), attorneys' fees and expenses, and the Class Representative award will be paid from the settlement fund.  (*Id.*, § 2.2).  After disbursements to the class, any money that remains in the net settlement fund will be distributed to the American Brain Foundation pursuant to the *Cy Pres* doctrine.  (*Id.*, § 2.2.4).

**D.    Notice Procedures**

The parties developed a Notice Plan with JND Legal Administration ("JND" or the "Settlement [or Claims] Administrator").  (*Id.*, § 1.2).

4

United States District Court
Central District of California

1       Within fourteen days of preliminary approval (and continuing for 45

2  days), JND will provide notice to the Settlement Class through a digital

3  media campaign with multiple targeting layers, including demographic,

4  Spanish language, behavioral/contextual and relevant interest.  (*Id.*, Ex. B,

5  at 3).   The primary platforms JND will use are Google Display Network

6  ("GDN") and Facebook.  (*Id.*; Keough Decl., Dkt. 189-4, ¶ 12).  Through

7  GDN, online banner advertisements may be placed on sites such as:

8  "People, AARP, Shape, Health, The Weather Channel, and Fox News."

9  (SA, Ex. B, at 4; Motion, at 9).  A nationwide internet search and a national

10  press release in English and Spanish will also be used.  (Keough Decl., ¶

11  13; SA, Ex. B, at 3-4).

12

13       The advertisements will direct class members to a settlement website

14  where detailed information, including full class notice, will be available and

15  claims can be made.  (Keough Decl., ¶ 14; SA, § 3.2; Motion, at 9-10).  The

16  settlement website will include information about the Settlement, a general

17  description of the lawsuit, the Settlement relief, important dates and

18  deadlines, Settlement Class members' legal rights, and relevant pleadings

19  and settlement documents.  (Motion, at 10).  The full class notice will also

20  direct Settlement Class Members to a toll-free telephone number hosted by

21  the Settlement Administrator where additional information is available.  (*Id.*).

22

23               **II.    LEGAL STANDARD**

24       Federal Rule of Civil Procedure 23(e) provides that "[t]he claims,

25  issues, or defenses of a certified class may be settled, voluntarily dismissed,

26  or compromised only with the court's approval."  "[S]trong judicial policy . . .

United States District Court
Central District of California

favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, the Court need only consider whether the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 3:08-cv-05198-EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. 5:15-cv-01551-JGB-DTBx, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the Preliminary Approval phase, the Court need only decide whether the settlement is potentially fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

### III.   DISCUSSION

**A.   <u>Class Certification</u>**

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that

6

notice is justified because the Court concludes it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement. When a plaintiff seeks conditional class certification for purposes of settlement, the court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003).

Under Rule 23(a), the plaintiff must show the class is: sufficiently numerous, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of those of the class, and the representative parties will fairly and adequately protect the class' interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes.

Here, Plaintiff seeks certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.      Rule 23(a) Requirements

#### i.      Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc.*

*Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. Jan. 5, 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when [the] class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. Nov. 16, 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473-74 (C.D. Cal. Dec. 20, 2012). Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations "plainly suffice" to meet the numerosity requirement. *In re Cooper*, 254 F.R.D. at 634.

Here, Plaintiff's allegations meet the standard for numerosity. The settlement class consists of approximately 365,000 units of Ginkgold. (Motion, at 18). The Court certainly may infer that more than 40 persons purchased 365,000 units of Ginkgold over the course of the class period. (*Id.*). Defendants, furthermore, do not dispute that the proposed class is numerous. Accordingly, as requiring the joinder of hundreds of thousands of plaintiffs would be impracticable, the Court finds the Class meets the numerosity requirement.

  ii. <u>Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a

"common contention" that is capable of class wide resolution.  (*Id.*).  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  (*Id.*).

Here, the overriding issue in this litigation presents a common question that can be determined on a class wide basis, which is whether Defendants misrepresented that the Ginkgold supplements provided cognitive benefits.

### iii.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims are typical of the class members' claims because every member of the class, including Plaintiff, asserts damages based on Defendants' advertising of its Ginkgold supplements as providing cognitive health benefits.  Plaintiff also notes that "Plaintiff and Settlement Class Members also seek the same relief for the same alleged wrongful conduct—refunds."  (Motion, at 20).  Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class.  *See Hanlon*, 150 F.3d at 1020; *see also Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563 AG-FMOx, 2019 WL 4854849, at *6 (C.D. Cal. Oct. 1, 2019) ("Because Plaintiff only seeks to represent a class of consumers whose credit reports

United States District Court
Central District of California

contained this exact same 'inaccuracy,' the unnamed class members share an identical injury.  Further, Plaintiff's claim is based on the same course of conduct by Defendant as the claims of the unnamed class members" satisfying the typicality requirement).

### iv.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires: (1) a lack of conflicts of interest between the proposed class and the proposed class representative, and (2) representation by qualified and competent counsel that will prosecute the action vigorously.  *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and the class representatives to pursue their own interests at the expense of the interests of the class.  (*Id.* at 958 n.12).

There is no evidence of a conflict of interest between Plaintiff and the class. Plaintiff's claims are identical to those of the class, and she has every incentive to pursue those claims vigorously.  Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class.  Plaintiff's counsel, Paula R. Brown and Timothy G. Blood of Blood Hurst & O'Reardon, LLP, have extensive experience litigating consumer protection class actions and relied on their experience litigating the instant action.  (*See* Brown Decl., Dkt. 189-2, ¶ 35, Ex. 1).  Counsel vigorously prosecuted this action since 2015 and meet all the criteria to be appointed as interim class counsel pursuant to Rule 23(g)(3).  *See, e.g., Reyes*, 2019

United States District Court
Central District of California

WL 4854849, at *7 ("As for Plaintiff's and counsel's willingness to vigorously prosecute this action on behalf of the class, the Court has no doubt. The Court knows only too well how actively this case has been litigated on both sides from its inception in 2016.").  There is also no evidence of conflicts of interest between Plaintiff and Defendants or Plaintiff's counsel and Defendants.

As Plaintiff has met all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

**2. Rule 23(b)(3) Requirements**

Plaintiff seeks preliminary class certification under Rule 23(b)(3).  Rule 23(b)(3) applies where the court finds: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009).

i. <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."  (*Id.*). "When common questions present a significant aspect of the case and they

United States District Court
Central District of California

can be resolved for all members of the class in a single adjudication, there

is clear justification for

handling the dispute on a representative rather than on an individual basis."

(*Id.*).

As discussed above, Plaintiff has demonstrated commonality amongst

proposed class members as the central issue in this case is whether

"Defendants' advertising of Ginkgold as providing cognitive health benefits

was false or misleading."  (Motion, at 22).  The only individual

determinations, then, are the quantification of damages for each Settlement

Class member—and such individual determinations do not defeat class

certification.  Plaintiff, therefore, has demonstrated that common issues

predominate over individualized concerns.

ii.    Superiority

"[T]he purpose of the superiority requirement is to assure that the

class action is the most efficient and effective means of resolving the

controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175

(9th Cir. 2010). Where recovery on an individual basis would be dwarfed by

the cost of litigating on an individual basis, this factor weighs in favor of

class certification.  (*Id.*).

A class action appears to be superior to other available methods for

adjudicating this matter fairly and efficiently.  The potential monetary relief

for each Settlement Class Member ($18.00 or $33.00 for each qualifying

Ginkgold product purchased) is dwarfed by the cost of litigating on an

individual basis.  Without class certification, it is unlikely that these claims would be litigated at all.  Hence, Plaintiff has satisfied Rule 23(b)(3).

### B.   Fairness, Adequacy, and Reasonableness of the Settlement

Plaintiff seeks preliminary approval of the Settlement Agreement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate."  *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026).  To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  (*Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003))).

At the preliminary approval stage, a full "fairness hearing" is not required. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  (*Id.*).

### 1.     Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027.

This case was filed on July 7, 2015 (Dkt. 1), and since then the Parties litigated two motions to dismiss (Dkts. 18, 149); litigated a motion for summary judgment (Dkt. 50); produced hundreds of pages of documents through formal discovery (Motion, at 5-6); engaged in five depositions of Defendant's Rule 30(b)(6) designees (*Id.*); briefed motions before the Ninth Circuit (Dkt. 104); reached a settlement on July 27, 2020, after three full-day mediations, one conducted by Honorable Edward A. Infante (Ret.) on June 8, 2016, and two with Scott Markus, Esq. on February 13, 2020, and April 1, 2020; and conducted numerous drafts, negotiations, and correspondence related to the completion of the Settlement Agreement.  (*Id.*).

There is no evidence to suggest the current Settlement was the product of uninformed or collusive negotiations.  Thus, this factor weighs in favor of preliminary approval.

### 2.     Obvious Deficiencies

The Court finds that the Settlement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.  As noted below, the Court has concerns over the requested attorneys' fees, incentive award, and Settlement Administrator award.  Nevertheless, those concerns are insufficient to make this factor weigh

against preliminary approval and can be addressed in more detail at the final fairness hearing.

### 3. Preferential Treatment to Class Representatives or Segments of Class

The proposed settlement does not improperly grant preferential treatment to class representatives. Although the Court has some minor concerns regarding Plaintiff's service award — see below — those concerns are insufficient to make this factor weigh against preliminary approval and can be addressed in more detail at the final fairness hearing.

### 4. Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17, 2009).

Moreover, to evaluate whether a settlement is fundamentally fair, adequate, and reasonable, the Court considers the factors that ulti- mately inform final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

15

governmental participant; and (8) the reaction of class members to the proposed settlement.  *Harris*, 2011 WL 1627973, at *7 (citing *Hanlon*, 150 F.3d at 1026).

i.    <u>Strength of Plaintiff's Case and Future Risk</u>

Plaintiff's claims do not appear overwhelmingly strong.  Plaintiff claims to believe in her case but recognizes that Defendants have demonstrated their ability to litigate this action through trial and appeal if necessary.  (Motion, at 12).

Class Counsel maintains that the Settlement Agreement is more than reasonable in light of the litigation risks that Plaintiff and Class Members would face if the case were not settled.  These risks include, inter alia, dismissal of class allegations, an adverse decision on the merits, loss of motions, the likely lengthy duration of further litigation, and the possibility that a trial would return a less favorable verdict.

As it stands, the "Settlement provides full refunds to Settlement Class Members", which is the requested relief in the case.  (Motion, at 13).  Given the relative strength of Plaintiff's claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable.  Hence, these factors favor preliminary approval.

ii.   Extent of Discovery Completed and Stage of the

Proceedings

This factor requires the Court to evaluate whether "the parties have

sufficient information to make an informed decision about settlement."

*Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently for five years, including

briefing two motions to dismiss, a motion for summary judgment, taking the

case on appeal, beginning formal discovery which included multiple rounds

of depositions and the production and review of a voluminous amount of

documents, and engaging in three full-day mediations.

Accordingly, the Court finds this factor weighs in favor of preliminary

approval.  *See Linney*, 151 F.3d at 1239.

iii.   Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class

actions similar to this case and hence has demonstrated the ability to

prosecute vigorously on behalf of the class members.  Accordingly, the

Court finds this factor weighs in favor of preliminary approval.

iv.   Presence of a Governmental Participant and Reaction of

the Class Members to the Proposed Settlement

As there is no governmental participant in this action and the parties

have not yet provided notice to the class members, these factors are

irrelevant for the

17

purposes of preliminary approval.

### v.     The Amount Offered in the Settlement

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton*, 327 F.3d at 963.

### a.     Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)).

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases.  *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

United States District Court
Central District of California

Here, Class Counsel indicates they intend to seek an award of attorneys' fees of no more than 33% of the settlement fund, which is above the Ninth Circuit's 25% "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Class Counsel does not set forth adequate reasons justifying such a fee; the Court therefore cannot undertake a preliminary evaluation of the request under the factors set forth in *Vizcaino* at this time. In light of the claims, stage of the action at the time of resolution, results achieved, and other information presented in Plaintiff's Motion, the Court is unable to determine at this time that an upward departure from the 25% benchmark is warranted and reasonable at the final settlement approval.

The Court will revisit the attorneys' fees request at the time the parties seek final approval.

### b.    Costs

According to the Agreement, Class Counsel will apply to the Court for reimbursement out of the settlement fund for reasonable attorneys' fees and expenses up to 33% of the Settlement Fund.  (SA, § 2.4.).  Class Counsel has not attached any accounting of past costs or expenses.  Thus, the Court will revisit the costs request at the time the parties seek final approval of the settlement.

### c.    Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for

19

financial or reputational risk undertaken in bringing the action, and,
sometimes, to recognize their willingness to act as a private attorney
general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir.
2009).

"The district court must evaluate [incentive] awards individually, using
'relevant factors includ[ing] the actions the plaintiff has taken to protect the
interests of the class, the degree to which the class has benefitted from
those actions, . . . the amount of time and effort the plaintiff expended in
pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"
*Staton*, 327 F.3d at 977.

Courts may also consider such factors as the risk to the class
representative in commencing suit, both financial and otherwise; the
notoriety and personal difficulties encountered by the class representative;
the amount of time and effort spent by the class representative; the duration
of the litigation; and the personal benefit (or lack thereof) enjoyed by the
class representative as a result of the litigation.  *Van Vranken v. Atl.
Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995).  "Courts
have generally found that $5,000 incentive payments are reasonable."
*Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008)
(citations omitted).

Under the proposed settlement agreement, the named Plaintiff will
receive an award of $5000.  (SA, § 2.4).  Class counsel failed to provide any
information regarding the "actions the plaintiff has taken to protect the

interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of ] workplace retaliation." *Staton*, 327 F.3d at 977.  Thus, although an incentive award of $5000 is generally reasonable, the Court cannot preliminarily approve such an award without additional evidence.

Accordingly, the Court declines to approve the incentive award at this stage and will revisit the incentive award request at the time the parties seek final approval of the settlement.

### d.    Settlement Administrator Costs

The Court has concerns with the parties' proposed Settlement Administrator costs as they are currently framed.  Critically, the parties do not specify a number, but propose to "cap" the costs at $400,000—a large chunk of the settlement fund—without justification.

The Court is unlikely to approve a $400,000 cap for Settlement Administrator costs where there is no definite portion that will be awarded to the Claims Administrator.  The Court will revisit the Claims Administrator costs request at the time the parties seek final approval of the settlement.

### e.    Conclusion Based on Review of *Hanlon* Factors

As almost all of the *Hanlon* factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of

1   possible approval" and that notice should be sent to class members.

2   *Vasquez*, 670 F. Supp. 2d at 1125.

3

4       Nevertheless, the Court stresses that it has concerns with the

5   proposed attorneys' fees award, incentive award, and the Settlement

6   Administrator costs in their current form at the final approval stage.

7

8   **C.   Notice Procedure**

9       Under Rule 23(e), the Court must "direct notice in a reasonable

10   manner to all class members who would be bound" by the proposed

11   settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is

12   "timely, accurate, and informative."  *See Hoffmann-La Roche Inc. v.*

13   *Sperling*, 493 U.S. 165, 172 (1989).

14

15       **1.    Notice Form**

16       The Court accepts the proposed notice form.  The notice form

17   explains: (1) basic information about the Action; (2) a description of the

18   benefits provided by the Settlement; (3) an explanation of how Settlement

19   Class Members can obtain Settlement benefits; (4) an explanation of how

20   Settlement Class Members can exercise their right to opt-out or object to the

21   Settlement; (5) an explanation that any claims against Defendants related to

22   the action will be released if the Settlement Class Member does not opt-out;

23   (6) the names of Class Counsel and information regarding attorneys' fees,

24   expenses, and the service award; (7) the Fairness Hearing date; (8) an

25   explanation that each Settlement Class Member has the right to appear at

26   the Fairness Hearing; and (9) the Settlement Website address and a toll-

22

free number where additional information can be obtained. (Motion, at 17; SA, Ex. A).

### 2.      Claims Administration

The Settlement Agreement states the Settlement Administrator will send the notice, claim, and request for exclusion forms and issue appropriate claim payments.  (SA, § 3.2.).  No later than fourteen (14) days after entry of the Preliminary Approval Order, the Settlement Administrator will begin dissemination of the Full Class Notice in the forms substantially similar to Exhibit A of the Settlement Agreement and in a manner consistent with the Notice Plan located in Exhibit B of the Settlement Agreement, for 45 days.  (SA, § 3.2; SA, Ex. B).

The Settlement Administrator will review and validate all claims submitted by potential Settlement Class Members by employing standard and adequate anti-fraud measures.  (SA, § 3.2).  Payments to Settlement Class Members for valid claims shall be mailed by the Settlement Administrator within thirty (30) days after the final effective date, which is five days after the final approval order entered by the Court.  (SA, § 3.2; SA, § 1.13).

The Court finds the notice form and proposed claims administration process is adequate.

**D.    *Cy Pres* Recipient**

The parties agree that "[a]ny money remaining after calculating distribution of valid claims will be distributed to the Settlement Class by first increasing the dollar amount of those claims, and then distributing any remainder to the American Brain Foundation in accordance with the *cy pres* doctrine."  (Motion, at 2).

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (citing *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir.1984)).  *Cy pres* distribution is "to put the unclaimed fund to the next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class."  *Masters v. Wilhemina Model Agency, Inc.*, 472 F.3d 423, 436 (2d Cir. 2007) (citations omitted).  Under the *cy pres* doctrine, the donors' or parties' intent must be followed "as nearly as possible."  *In re Wells Fargo Secs. Litig.*, 991 F. Supp. 1193, 1195 (N.D. Cal. Jan. 20, 1998) (citations omitted).  "The use of *cy pres* ... to distribute unclaimed funds may be considered only after a valid judgment for damages has been rendered against the defendant."  *Six (6) Mexican Workers*, 904 F.2d at 1307.

"While the law generally favors distributing unclaimed funds for a purpose as near as possible to the legitimate objectives underlying the lawsuit, a direct nexus between the injured plaintiffs and the *cy pres* recipients is neither always feasible nor required."  *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009)

(comparing *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 680 (8th Cir. 2002) (holding that the trial court had abused its discretion with respect to *cy pres* distribution because there was no nexus between the injured class and the local organizations receiving unclaimed funds) (citing *Powell v. Georgia-Pacific Corp,*, 119 F.3d 703, 706-07 (8th Cir. 1997) (approving the district court's order that nearly $1 million in remainder settlement funds be distributed as scholarships to African-American high school students because the scholarship program carried out the plaintiffs' desire and addressed the subject matter of the lawsuit: employment opportunities available to African Americans in the region)), with *Superior Beverage Co. v. Owens-Ill., Inc.*, 827 F. Supp. 477, 479 (N.D. Ill. 1993) (holding that unclaimed funds remaining after settlement of an antitrust case may be distributed to other public interests not closely related to the origins of the case)).

The Court finds the American Brain Foundation has a sufficient nexus to the class here and therefore approves the *cy pres* designation.

**E.      Class Representative and Class Counsel**

As explained above, the Court finds that Plaintiff will fairly and adequately protect the interests of the class and that proposed class counsel, Paula R. Brown and Timothy G. Blood of Blood Hurst & O'Reardon, LLP, are well equipped to represent the class.

Accordingly, the Court designates Plaintiff Kathleen Sonner as Class Representative for the Settlement Class and appoints Paula R. Brown and Timothy G. Blood of Blood Hurst & O'Reardon, LLP as class counsel.

## IV.    CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the proposed attorneys' fees, incentive award, and Settlement Administrator costs, the proposed settlement is within the range of possible final approval. The Court, therefore, GRANTS Plaintiff's Motion for preliminary approval of class action settlement and conditionally certifies the class for settlement.

Within fourteen (14) calendar days of this Order the Settlement Administrator, JND, shall disseminate notice through the media campaign plan portrayed in Exhibit B of the Settlement Agreement, for 45 days.

Class members shall have thirty (30) calendar days from the date of the completion of the 45-day notice period to submit a claim form, object, or opt out of the settlement.

The Court approves the parties' requested briefing deadlines, which will be based on the date of the final fairness hearing.

/ / /

/ / /

/ / /

The final approval hearing will be conducted within ninety (90) calendar days from the date of this Order, or at such other time as the Court may order.

**IT IS SO ORDERED.**

Dated:   10/1/20

Virginia A. Phillips
United States District Judge