JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kathleen Sonner,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Schwabe North America, Inc. et al,<br><br>　　　　Defendants. | 5:15-cv-01358-VAP-SPx<br><br>**Order GRANTING Final Approval of Class Action Settlement (Dkt. 203)** |

Before the Court is Plaintiff Kathleen Sonner's ("Plaintiff") unopposed Motion for Final Approval of Class Action Settlement ("Motion"). (Dkt. 203).[1] Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15. The Court GRANTS the Motion IN PART.

## I.    BACKGROUND

### A.    Procedural History

The parties are familiar with the background of this dispute, and the Court detailed the facts in its Order granting Preliminary Approval of Class Action Settlement. (Dkt. 198). In short, this proposed class action settlement represents the outcome of a lawsuit pending for five years,

---

[1] Defendants filed their Notice of Non-Opposition on January 5, 2021. (Dkt. 205).

1

alleging false advertising and other claims. The class, as defined in the settlement agreement, would include "[a]ll people who purchased in California Ginkgold or Ginkgold Max from July 7, 2011 through the date of preliminary approval, and all people who purchased in the United States other than in California Ginkgold or Ginkgold Max from January 1, 2016 through the date of preliminary approval." (*Id.*)

The parties participated in extensive motion practice throughout the litigation, including: two motions to dismiss, a motion for summary judgment, briefing at the Ninth Circuit Court of Appeal, class certification briefing, and other discovery related motions. (*Id.*) The parties also produced and analyzed over 172,000 pages of documents and conducted Rule 30(b)(6) and expert depositions (three of which occurred during the COVID-19 pandemic). (*Id.*) The parties participated in three full-day mediation sessions, one before Honorable Edward A. Infante (Ret.) on June 8, 2016, and two with Scott Markus, Esq. on February 13, 2020, and April 1, 2020. (*Id.*) Mediation statements were submitted for each session. (*Id.*) The parties finally reached a resolution on July 27, 2020. (*Id.*)

**B.    Settlement Terms**

The parties prepared a joint settlement agreement ("Settlement Agreement" or "SA"). (Dkt. 186). The Settlement Agreement establishes a settlement fund of $3,375,000.00. (*Id.*, § 2.2).

Settlement class members are entitled to reimbursements for all qualifying purchases for which they can provide proof of purchase. (*Id.*)

Otherwise, Settlement class members can claim up to 3 reimbursements for their qualifying Ginkgold purchases by filling out a claim form and declaring under penalty of perjury that they made the claimed purchase(s).  (*Id.*)

If the amount of the net settlement fund exceeds the aggregate of the valid claims, each claim will be increased by up to five (5) times the submitted amount.  (*Id.*, § 2.2.1).  The Settlement Agreement also entitles Plaintiff to a class representative award of $5,000.00.  (*Id.*)  After disbursements to the class, any money that remains in the net settlement fund will be distributed to the American Brain Foundation pursuant to the *Cy Pres* doctrine.  (*Id.*, § 2.2.4).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. (*Id.*) A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement. *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of*

4

*Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008-DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998).

### III. DISCUSSION

**A.  Fairness, Adequacy, and Reasonableness of the Settlement**

1.  Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027.

As previously found by this Court, the parties engaged in arm's length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel.  Additionally, the Settlement Agreement was reached after three full-day mediations, one conducted by the Honorable Edward A. Infante (Ret.) on June 8, 2016, and two with Scott Markus, Esq. on February 13, 2020.  The Settlement Agreement is therefore presumptively the product of a non-collusive, arms-length negotiation, *see Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a settlement that is the product of an arms-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable); *Satchell v. Fed. ExpressCorp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr.

13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). This factor weighs in favor of approval.

### 2. Strength of Plaintiff's Case and Future Risk

Plaintiff's claims have withstood motions to dismiss and for summary judgment, but face more hurdles, particularly in proof of damage if the case proceeded to trial. Plaintiff claims to believe in her case but recognizes that Defendants have demonstrated their ability to litigate this action through trial and appeal if necessary.

Class Counsel maintains that the Settlement Agreement is more than reasonable in light of the litigation risks that Plaintiff and Class Members would face if the case were not settled. These risks include, inter alia, dismissal of class allegations, an adverse decision on the merits, loss of motions, the likely lengthy duration of further litigation, and the possibility that a trial would return a less favorable verdict.

As it stands, each "Settlement Class Member who submits a valid claim will receive cash reimbursement for up to three purchases of Ginkgold without proof of purchase. For Settlement Class Members with proof of purchase, they may receive up to their full purchase price for all purchases," which is the requested relief in the case. (*See* Dkt. 203-1, at 5). Given the relative strength of Plaintiff's claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable. Hence, these factors favor approval.

### 3. Amount Offered in the Settlement

As noted above, the Settlement Agreement establishes a settlement fund of $3,375,000.00. (Dkt. 186, § 2.2). The average retail price of Ginkgold ranges from $23.00 to $28.00 over the Settlement Class period. (Dkt. 203-1). "If the requested cost of notice, attorneys' fees and expenses, and plaintiff service award (totaling $1,518,750) are awarded and deducted from the Settlement Fund, $1,856,250 remains to pay Settlement Class Members. Assuming 80,0000 valid claims are made, Settlement Class Members will receive an average cash reimbursement of $23.20 each." (*Id.*)

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). As discussed in more detail below, the Court finds that amount offered in settlement weighs in favor of final approval.

### 4. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently for five years, including briefing two motions to dismiss, a motion for summary judgment, taking the

case on appeal, beginning formal discovery which included multiple rounds of depositions and the production and review of a very large number of documents, and engaging in three full-day mediations. Accordingly, the Court finds this factor weighs in favor of approval. *See Linney*, 151 F.3d at 1239.

### 5. Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class actions similar to this case and hence has demonstrated the ability to prosecute vigorously on behalf of the class members. Accordingly, the Court finds this factor weighs in favor of approval.

### 6. Presence of a Governmental Participant

As there is no governmental participant in this action, this factor is irrelevant for the purposes of final approval.

### 7. The Reaction of The Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign. (Dkt. 203-5). The Notice explains in plain language

what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option. (*Id.*, Ex. E). During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn. (Dkt. 203-1, at 11).

Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall. Accordingly, this factor also weighs in favor of approval.

### 8. Balancing the Factors

As all the relevant factors favor approval, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate and GRANTS final approval of the Settlement Agreement.

## B. Plaintiff's Motion for Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)). Here, Plaintiff seeks to employ the percentage-of-the fund method and the lodestar method and requests $946,916.21, i.e., 28% of the Gross Settlement Amount, on behalf of Class Counsel.

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50). The Court addresses these factors below:

1. <u>Results Achieved</u>

Plaintiff's Counsel has shown that it obtained a good result. The settlement provides nearly a full refund to the Settlement Class Members for their Ginkgold purchases and no proof of purchase is required to receive up to three reimbursements. "For Settlement Class Members with proof of purchase, they may receive up to their full purchase price for all purchases," which is the requested relief in the case. (*See* Dkt. 203-1, at 5). Although Plaintiff's Counsel has not provided information on the maximum possible value class members could have received, this factor weighs in favor of approving the proposed attorneys' fees award.

2. <u>Risks of Litigation</u>

Plaintiff's Counsel assumed some degree of risk by representing Plaintiff, although not extreme risk. The litigation lasted five years, and

Plaintiff's Counsel successfully appealed the dismissal of the case. This merits a small departure from the 25% benchmark. *Compare Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), *and Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), *with Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).

### 3. Contingent Nature of the Fees and Burdens Carried

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Plaintiff's Counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Here, Plaintiff's Counsel took this case on a contingency fee basis. Thus, this factor weighs slightly in favor of an upward deviation from the benchmark.

### 4. Burdens Carried

Plaintiff's Counsel have provided information as to the costs in prosecuting this action, which, combined, account for $166,833.79 of the total $1,113,750.00 requested. (Dkt. 203-1, at 12). The Court finds these expenses reasonable, but not overly burdensome, so this factor is neutral.

### 5. Skill and Quality of the Work

Plaintiff's Counsel are experienced and skilled litigators, and their work on this case included the successful prosecution of an appeal to the Ninth Circuit Court of Appeals. Their work merits the small upward departure from the 25% benchmark.

### 6. Awards Made in Similar Cases

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Plaintiff's Counsel requests the Court enhance the award, citing to cases in which courts have awarded attorneys' fees at or above one third of the total settlement fund. (*See* Dkt. 203-1, at 19-20). The results achieved in the cited authorities are not sufficiently similar to the result here to be persuasive. Nevertheless, given the quality of the work performed by Plaintiff's counsel, and their successful work on appeal, this factor weighs in favor of a modest departure from the 25% benchmark.

### 7. Lodestar Cross-Check

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the

1 percentage award.  Where such investment is minimal, as in the case of an
2 early settlement, the lodestar calculation may convince a court that a lower
3 percentage is reasonable.  Similarly, the lodestar calculation can be helpful
4 in suggesting a higher percentage when litigation has been protracted.
5 Thus, while the primary basis of the fee award remains the percentage
6 method, the lodestar may provide a useful perspective on the
7 reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050.

9 "To inform and assist the court in the exercise of its discretion, the
10 burden is on the fee applicant to produce satisfactory evidence—in addition
11 to the attorney's own affidavits—that the requested rates are in line with
12 those prevailing in the community for similar services by lawyers of
13 reasonably comparable skill, experience and reputation."  *Camacho v.*
14 *Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v.*
15 *Stenson*, 465 U.S. 886, 896 (1984)).

17 Here, Plaintiff's Counsel report that its lodestar is $1,416,113.25,
18 based on a total of approximately 2,457.25 hours from Blood Hurst &
19 O'Reardon, LLP at hourly rates of $410.00 to $810.00 for each attorney on
20 the matter and $280.00/hour for paralegals (totaling $1,307,851.25in fees)
21 and $162,123.67 in litigation expenses.  (Dkt. 203-2, ¶ 12).  The lodestar is
22 also based on a total of approximately 219 hours from Carlson Lynch LLP at
23 hourly rates of $750 for one partner, $395 for one associate, and $125 for
24 one paralegal (totaling $102,262.00 in fees) and $4,710.12 in litigation
25 expenses.  (Dkt. 203-3, ¶¶ 5-6).

After a review of Plaintiff's Counsel's declarations, the Court concludes that the lodestar amount is reasonable considering the work performed and the prevailing rates in the community for attorneys of comparable skill, experience and reputation. Counsel provided supporting evidence as to the prevailing rates in the community for similar services by lawyers of reasonably comparable skill. (Dkt. 203-2, ¶ 11, Ex. A; Dkt. 203-3, ¶ 9). Further, Counsel have provided detail regarding the number of hours it spent on this case.

Moreover, the fee Counsel seeks reflects a negative multiplier of 0.66 on the lodestar which is reasonable for a complex class action case. *See Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535, 2019 U.S. Dist. LEXIS 187530, at *29 (E.D. Cal. Oct. 28, 2019) (awarding 33.3% of common fund where lodestar amounted to a negative multiplier); *see Hopkins v. Stryker Sales Corp.*, 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). In the recent $50 million settlement in *Spann*, Judge Olguin held that a multiplier of 3.07 was "well within the range of reasonable multipliers." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *see also Vizcaino*, 290 F.3d at 1052–1054 (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher").

8. <u>Conclusion</u>

In sum, five of the *Vizcaino* factors weigh in favor of a small departure from the 25% attorneys' fee award benchmark and one factor is neutral. In addition, Plaintiff's Counsel's lodestar calculation figures are reasonable. The Court therefore finds that the facts of this case support a departure from the benchmark by 3% from 25% to 28%.

Accordingly, the Court GRANTS Plaintiff's Counsel's application for attorneys' fees equal to 28% of the settlement fund ($946,916.21).

**C.     Costs**

Class counsel seeks $166,833.79 in litigation costs. Class Counsel have submitted a detailed accounting as to those expenses. (Dkt. 203-2, ¶ 17; Dkt. 203-3, ¶ 5). This includes settlement administrator costs of $46,976.32. The Court finds that reimbursement of those expenses is reasonable and APPROVES the reimbursement in the amount sought.

**D.     Incentive Award**

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

15

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Under the proposed settlement agreement, the named Plaintiff will receive an award of $5,000.00. Class counsel notes that the named Plaintiff devoted substantial time and effort to this litigation, "including being deposed over several hours, providing written responses to discovery requests, checking for and providing requested documents, participating in periodic telephone conferences and exchanging correspondence with Plaintiff's counsel, and reviewing and approving pleadings, including the complaint and the Settlement Agreement." (Dkt. 203-1, at 22-23).

The Court approves an award of a total of $5,000.00 for the named Plaintiff as an incentive award.

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Final Approval of Class Action Settlement.

**IT IS SO ORDERED.**

Dated: 1/25/21

Virginia A. Phillips
United States District Judge